## Nos. 23-1660 and 23-1661

---

## United States Court Of Appeals For The Seventh Circuit

_____

### MEGAN PASSARELLA and SANDRA DOTTENWHY,

Plaintiffs-Appellants,

v.

### ASPIRUS, INC.,

Defendant-Appellee.

_____

On Appeal from the U.S. District Court for the Western District of Wisconsin,
Case No: 3:22-cv-00287-jdp and Case No: 3:22-cv-00342-jdp
District Chief Judge James D. Peterson
Date NOA filed in District Court: 4/4/2023

_____

## APPELLANTS' PRINCIPAL BRIEF

_____

Erick G. Kaardal, (WI) 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

May 15, 2023

# Disclosure Statement

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __23-1660__

Short Caption: __Megan Passarella v. Aspirus, Inc.__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    __Megan Passarella__

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    __Erick G. Kaardal of Mohrman, Kaardal & Erickson, P.A.__

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        __N/A__

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        __N/A__

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    __N/A__

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    __N/A__

---

Attorney's Signature: __/s/Erick G. Kaardal__    Date: __5/15/2023__

Attorney's Printed Name: __Erick G. Kaardal__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☑  No ☐

Address: __Mohrman, Kaardal & Erickson, P.A.__

    __150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402__

Phone Number: __612-341-1074__    Fax Number: __None__

E-Mail Address: __kaardal@mklaw.com__

rev. 12/19 AK

# Disclosure Statement

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-1661

Short Caption: Sandra Dottenwhy v. Aspirus, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Sandra Dottenwhy

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Erick G. Kaardal of Mohrman, Kaardal & Erickson, P.A.

(3)  If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/Erick G. Kaardal          Date: 5/15/2023

Attorney's Printed Name: Erick G. Kaardal

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: Mohrman, Kaardal & Erickson, P.A.

150 South Fifth Street, Suite 3100, Minneapolis, Minnesota 55402

Phone Number: 612-341-1074          Fax Number: None

E-Mail Address: kaardal@mklaw.com

rev. 12/19 AK

# Table of Contents

Disclosure Statement ................................................................................. i

Disclosure Statement ................................................................................ ii

Table of Authorities .................................................................................. vi

Jurisdictional Statement ........................................................................... 1

    A.  District Court Jurisdiction ......................................................... 1

    B.  Appellate Court Jurisdiction ..................................................... 1

Issue Presented ........................................................................................ 2

Introduction ............................................................................................. 2

Statement of the Case .............................................................................. 4

I.    Dottenwhy and Passarella sought a religious exemption from taking the COVID-19 vaccine as a condition of employment, but despite their religious beliefs, Aspirus denied their respective requests and terminated their employment. ..................................................... 4

II.   The district court granted Aspirus's dismissal of Passarella's and Dottenwhy's complaints concluding their religious beliefs were not sincere as related to Aspirus' employment requirement to receive the vaccine. ............................................................................... 7

Summary of the Argument ....................................................................... 8

Argument ................................................................................................ 10

    The applicable standard of review for a motion to dismiss is *de novo*. .................................................................................................. 10

I.    At the motion to dismiss stage, courts are to liberally construe allegations of religious beliefs as sincerely held. ....................... 10

II.   Passarella and Dottenwhy's complaints sufficiently pled allegations of their sincerely held religious beliefs. ................................ 12

A.  A determination of what is a religion or religious belief is difficult and because courts are not the arbiters of Scriptural interpretation care should be taken not engage in credibility issues at the motion to dismiss stage. ............................... 12

III.  Dottenwhy and Passarella sufficiently pled allegations showing how their sincerely held religious beliefs were in conflict with Aspirus's condition of employment to take the COVID-19 vaccine.................................... 18

A.  The Sincerity of Appellants' Religious beliefs are Fact Issues Appropriate for Trial, Not a Motion to Dismiss. ........................... 21

B.  Passarella's and Dottenwhy's Practices or Observances conflicting with the Appellee's Vaccine Mandate were "religious in nature."..................................................... 22

i.  Passarella and Dottenwhy identify themselves as Christians and their sincerely held beliefs to Christian tenets. ....................................................... 24

ii.  If there was any doubt of Passarella's and Dottenwhy's religious beliefs were sincerely held, the foundation of their believes include  a "deity," "involve matters of the afterlife, spirituality," the "soul," deal with issues of "ultimate concern" and "occupy a place parallel to that filled by God in traditionally religious persons."................... 28

C.  The District court's Analysis Demonstrated Clear Error By Applying the Incorrect Standard. ..................................... 30

D.  Passarella's and Dottenwhy's expressed health concerns overlapped with their religious beliefs............................. 32

E.  Passarella's and Dottenwhy's concerns about safety and health are part of their religious beliefs..................................... 35

F.  Aspirus's policy and process denied Passarella and Dottenwhy the means to fully express their religious beliefs as it related to difficult decisions............................................. 40

G.  The District court's Reliance on *Fallon* was misplaced.................. 45

H.   Aspirus recognized that Passarella's held sincere religious beliefs, but the district court failed to adhere to this factual concession. ......................................................................................... 48

Conclusion ................................................................................................ 50

CERTIFICATE OF COMPLIANCE ........................................................ 51

APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT ................................. 52

CERTIFICATE OF SERVICE ..................................................................... 52

# Table of Authorities

Page(s)

## Cases

*Ackridge v. Aramark Corr. Food Servs.,*
No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018) ................................ 10

*Adeyeye v. Heartland Sweeteners, LLC,*
721 F.3d ................................................................................................................passim

*Africa v. Com. Of Pa.,*
662 F.2d 1025 (3rd Cir. 1981) ...................................................... 15, 17, 25, 26

*Am. Legion v. Am. Humanist Assn.,*
139 S.Ct. 2067 (June 20, 2019) .................................................................. 26

*Blackwell v. Lehigh Valley Health Network,*
No. 5:22-cv-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan 23, 2023) ........................ 48

*Brown v. Dade Christian Schools, Inc.,*
556 F.2d 310 (5th Cir.1977) .............................................................. 17

*Brown v. Pena,*
441 F.Supp. 1382 (S.D.Fla.1977) ...................................................... 17

*Brown v. Resor,*
407 F.2d 281 (5th Cir.1969) .............................................................. 17

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ...................................................................... 16

*Calderon-Ramirez v. McCament,*
877 F.3d 272 (7th Cir. 2017) ............................................................ 10

*Chaidez v. Ford Motor Co.,*
937 F.3d 998 (7th Cir. 2019) ............................................................ 10

*Cooper v. General Dynamics,*
533 F.2d 163 (5th Cir.1976) .......................................................... 17, 22

*E.E.O.C. v. Ilona of Hungary, Inc.,*
   108 F.3d 1569 (7th Cir. 1997) .................................................... 11

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados*
   *de Puerto Rico*, 279 F.3d 49 (1st Cir. 2002) ....................................... 21

*Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania,*
   877 F.3d 487 (3d Cir. 2017) ...................................................passim

*Farid v. Smith,*
   850 F.2d 917 (2d Cir. 1988) ...................................................... 10

*Finkbeiner v. Geisinger Clinic,*
   No. 4:21-CV-01903, 2022 WL 3702004 (M.D. Pa. Aug. 26, 2022) .......................... 48

*Fowler v. Rhode Island,*
   345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953) .................................... 15

*Grzyb v. Grzyb,*
   79 Va. Cir. 93 (2009) ............................................................ 36

*In re Krehl,*
   86 F.3d 737 (7th Cir.1996) ....................................................... 11

*Johnson v. Do*ty, 15-CV-7823 (KMK),
   2019 WL 2137361 (S.D.N.Y. May 16, 2019) .......................................... 10

*Kaufman v. McCaughtry,*
   419 F3d 678 (7th Cir. 2005) .................................................. 23, 29

*Mosier v. Maynard,*
   937 F.2d 1521 (10th Cir. 1991) ................................................... 16

*Patrick v. LeFevre,*
   745 F.2d 153 (2d Cir. 1984) ...................................................... 10

*Peterson v. Wilmur Commc'ns, Inc.,*
   205 F. Supp. 2d 1014 (E.D. Wis. 2002) ........................................ 14, 21

*Porter v. City of Chi.,*
   700 F.3d 944 (7th Cir. 2012) ................................................. 13, 21

*Redmond v. GAF Corp.,*
  574 F.2d 897 (7th Cir. 1978)................................................................15, 22, 23

*Sherr v. Northport-E. Northport Union Free Sch. Dist.,*
  672 F. Supp. 81 (E.D.N.Y. 1987)........................................................... 37

*Stevens v. Berger,*
  428 F. Supp. 896 (E.D.N.Y. 1977) ....................................................... 17

*Theriault v. Carlson*
  495 F.2d 390 (5th Cir.1974)................................................................. 17

*Thomas v. Review Bd. Of Indiana Employment Sec. Division,*
  450 U.S. 707 (1981)..............................................................................15, 16, 21

*U.S. v. Meyers,*
  95 F.3d 1475 (10th Cir 1996)............................................................... 25, 26

*United States v. Ballard,*
  322 U.S. 78 (1944)................................................................................ 16

*United States v. Seeger,*
  380 U.S. 163 (1965)..............................................................................passim

*Vinning–El v. Evans,*
  657 F.3d 591 (7th Cir.2011) ................................................................. 29

*Volling v. Kurtz Paramedic Services, Inc.,*
  840 F.3d 378 (7th Cir. 2016) ............................................................... 11

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1331 ..................................................................................... 1

42 U.S.C. § 2000e(j).................................................................................14, 21, 22

42 U.S.C. § 2000e-2(a).............................................................................1, 2, 14, 21

**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ..................................................... 3

**Regulations**

29 C.F.R. § 1605.1 ............................................................................................... 15, 21

**Other Authorities**

*Religious, Sincerity, and Free Exercise,*
   25 Catholic Lawyer 246 (1980) ......................................................................... 17

## Jurisdictional Statement

### A. District Court Jurisdiction

The district court had jurisdiction under 28 U.S.C. § 1331 as a civil action arising under the laws of the United States as a federal question, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Plaintiffs Megan Passarella and Sandra Dottenwhy filed separate complaints against the defendant Aspirus, Inc. Both claimed Aspirus discriminated against her as an employee and fired her because of her religious beliefs. The final judgments and combined opinion and order for the Western District of Wisconsin were entered by the Honorable James D. Peterson. The Plaintiff Megan Passarella's final judgment was entered on March 15, 2023 (Passarella (22-cv-287-jdp, Dckt. No. 16) based upon the combined opinion and order dated March 10, 2023 (Passarella (22-cv-287-jdp, Dckt. No. 15)) (Dottenwhy (22-cv-342-jdp, Dckt. No. 17)). The district court granted Aspirus's motion to dismiss with prejudice. The plaintiffs' second claim, based upon the Americans with Disabilities Act, was dismissed without prejudice for failure to exhaust their administrative remedies. Only the Civil Rights claim under Title VII is being appealed. *See* APP. 1–17. The district court's opinion and order in *Passarella v. Aspirus* and *Dottenwhy v. Aspirus* is a final decision for both matters. APP. 1–17.

### B. Appellate Court Jurisdiction

The United States Court of Appeals has jurisdiction to decide this case under 28 U.S.C. § 1291. Section 1291 states that the "courts of appeals (other than

the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States….”

The Notices of Appeal for *Passarella v. Aspirus* and *Dottenwhy v. Aspirus* were filed with the district court on April 4, 2023. By order of this Court, the appeals were consolidated on April 10, 2023. APP. 18.

## Issue Presented

Terminated health-care employees filed a federal complaint against their employer under Title IV which prohibits employers from discriminating against employees based upon their religious beliefs. The issue presented is:

> Whether a district court may dismiss a complaint under a Rule 12(b)(6) motion to dismiss standards, when the complaint has pled sincerely-held religious beliefs that conflict with the employer’s vaccine mandate.

## Introduction

The Appellants Megan Passarella and Sandra Dottenwhy filed civil actions for employment religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Both worked as healthcare professionals with the Appellee Aspirus, Inc. a non-profit health care system that operates hospitals, clinics, and pharmacies in Wisconsin. In 2021, Aspirus required employees, as an employment condition, to be vaccinated with a COVID-19 vaccine. Passarella and Dottenwhy sought a religious exemption from the vaccine requirement. Aspirus warned that if any non-religious rationale was used in the religious exemption submission, it would likely result in a denial.

Passarella and Dottenwhy submitted their requests for religious exemptions, attempting to navigate through Aspirus' numerous restrictions on the requests for exemption.  In their requests, Passarella and Dottenwhy explained how their religious beliefs affected their daily life-changing decisions, and also tried to explain how their respective sincerely-held religious beliefs resulted in their decision not to take a COVID-19 vaccine. Their religious based decisions to not receive the Covid-19 vaccinations caused Aspirus to fire both.

Soon after, Passarella and Dottenwhy filed their respective federal Title VII claims. Each alleged their personally held religious beliefs and how they reached a decision not to take the COVID-19 vaccine. Aspirus moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court, in a consolidated opinion and order concluded that Passarella's and Dottenwhy's vaccine refusal was based upon their personal judgments and not for religious reasons. According to the court, although they described their religious beliefs, explained their decisions in religious terms and claimed they were ratified by prayer, the Court found that Passarella's and Dottenwhy's decisions were made because of non-religious beliefs rather than religious beliefs. The court, in a consolidated opinion and order granted Aspirus's motion to dismiss. The court concluded Passarella and Dottenwhy failed to meet the prima facie test of the first element of a religious discrimination claim—the observance or practice conflicting with an employment requirement is religious in nature.

Passarella and Dottenwhy seek reversal of the district court's decision.

## Statement of the Case

**I.  Dottenwhy and Passarella sought a religious exemption from taking the COVID-19 vaccine as a condition of employment, but despite their religious beliefs, Aspirus denied their respective requests and terminated their employment.**

The Appellee Aspirus, Inc. employed Appellants Sandra Dottenwhy and Megan Passarella as health care professionals. APP. 4, Or. at 4. Dottenwhy is a pharmacy technician; *Id.,* Passarella a registered nurse. *Id.* at 5. Aspirus is a non-profit health care system that operates hospitals, clinics, and pharmacies in Wisconsin and the upper peninsula of Michigan. *Id.* at 4.

In August 2021, Aspirus required employees who were unvaccinated against the COVID-19 virus, to submit to bi-weekly testing for the COVID-19 virus. *Id.* Dottenwhy and Passarella cooperated with the requirement. *Id.* But, several months later in November 2021, Aspirus notified employees that as a condition of employment they would be required to take a COVID vaccine. *Id.* Failure to do so would mean termination of their employment by December. *Id.*

In the meantime, Aspirus also notified its employees that they could seek a religious exemption from the vaccination requirement. *Id.* However, Aspirus made a pre-determinative condition that would result in a denial of the religious exemption:

> "non-religious rationale *anywhere* in the submission will likely result in denial."

*Id.*

Attached to her complaint as Exhibit A is Passarella's submission to Aspirus.[1]

While there appears some confusion as to her initial exemption request, her appeal reflects the reliance of her religious beliefs in making secular decisions, like taking vaccines. 22-cv-287-jdp, Dckt. 1, (Ex. 1 (Nov. 17, 2021)). Throughout her explanation to Aspirus, Passarella revealed her deepest religious feelings and how her faith is used in making secular decisions:

My Deeply Held Religious Belief About My Body and My Conscience.

> Because I believe in Jesus Christ, His Holy Spirit, God Himself, dwells within me. My Body is His Temple. (1 Corinthians 6). Scripture make it clear… God dwells in the Temple, and there a man communes with Him. God speaks harshly of, and deals harshly with, those who defile his temple. (Jeremiah 7:1-15) I must use my body to glorify God." I must do this to the best of my ability, employing my God-given reason and always attempting to do what pleases Him in good faith and under varying circumstances. This includes obeying scripture and the divine wisdom and discernment imparted to me by the Holy Spirit through prayer. … With my religion, conscience is considered God-given (Rom. 2:14-16), or in other words, a message directly from the Holy Spirit (part of the Holy Trinity." … I understand that the Holy Spirit dwells within me (1 Corinthians 3:16); therefore, I am assured that my conscience comes from God.
>
> * * *
>
> After prayerful consideration, I don't feel at peace about receiving the Covid vaccine. I believe that I must trust God with my body (His Temple) and that he will provide for me and protect me as he has already proven time and time again during my life. The Catechism of the Catholic Church states that "a human being must always obey the certain judgment of his conscience. If he

---

[1] The district court accepted all documents submitted by the parties regarding their respective arguments related to the motion to dismiss. APP. 3, Or. at 3.

were to act against it deliberately, he would condemn himself…"
This means that because of my Deeply Held Religious Belief, I am
obligated to operate under my conscience, which is a God-give
message. Because of this, I am obligated to operate under my firm
belief that I cannot get the Covid vaccine. … there is plenty of
evidence of adverse, debilitating injuries resulting from receiving
the vaccine.   … this means receiving the vaccine would not be
acting in accordance with God.  It would be a sin for me to
receive it.

* * *

So glorify God in your body.  Ultimately, my body belongs to the
Lord.  It is His dwelling place.  Therefore, I have a responsibility
to be watchful and careful regarding what I do with my body, how
I use my body, and even what I allow into my body….My duty to
God is to reasonably preserve my body, not endanger it

* * *

Applying this specific text to the current scenario [the vaccine
mandate], I must follow the message that God has given me not
to receive the vaccine, …".

*Passarella Compl. Ex. 1 (emphasis added).*

Dottenwhy, like Passarella, submitted her religious exemption request to

Aspirus. Her approach was concise, but similar. Asserting doubts and concerns

regarding the safety of the COVID-19 vaccine, Dottenwhy relied upon her religious

beliefs to guide her in her decision to not take the vaccine and requested an

exemption. *Dottenwhy Opp. Memo., Ex. A, 22-0342, Dckt. No. 11-1, Ex. A (Sept. 10,*

*2022).*

Unlike Passarella, Dottenwhy was more direct regarding her thoughts on her

religious beliefs as applied to her decision-making:

> "I am asserting my right as a Christian to be exempt from taking this vaccine.  I have prayed about this and have asked GOD for guidance, and I believe that HE is with me on this decision.  I feel the Covid vaccine was developed in haste and I don't trust the information and the long term effects that may come about.  Therefore, I am not comfortable putting this vaccine into my body.… *Phillipians 1:20.*  I eagerly expect and hope that I will no way be ashamed, but will have sufficient courage so that now as always Christ will be exalted in my body, whether by life or death."

*Dottenwhy Mem. Opp. Mot. To Dismiss, Exhibit A, p. 1.*

In her appeal of Appellee's denial of her religious exemption, Appellant Dottenwhy stated:

> "In my opinion the Covid vaccine was developed too quickly.  *Not enough time for deep study.*  I have prayed long and hard about this and *I am fearful of the effects.*  The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to GOD. …"

*Dottenwhy Mem. Opp. Mot. To Dismiss, Exhibit A, p. 4 (emphasis added).*

In an interesting twist, Aspirus granted Passarella's religious exemption for her clinical rotation, but denied her request as a registered nurse, even though both requests for religious exemptions were identical. *Passarella Compl. ¶¶ 28–29, Dckt. No. 1.* On appeal, the denial was upheld. *Id.  ¶ 30.* Aspirus outright denied Dottenwhy's initial request and her appeal.

## II.   The district court granted Aspirus's dismissal of Passarella's and Dottenwhy's complaints concluding their religious beliefs were not sincere as related to Aspirus' employment requirement to receive the vaccine.

The district court granted Aspirus's motion to dismiss. In dismissing

Passarella's and Dottenwhy's respective complaints, the court found that their "objections to the Covid vaccine were based on their medical judgment that the vaccine was unsafe," rather than because of a "sincere religious conviction." APP. 2, Or. at 2. The court held that appellants Passarella and Dottenwhy "have not alleged the first element "that the practice or observance conflicting with the employment practice is "religious in nature." *Id.,* at 8. Hence, the court concluded that their respective "concern for the safety of the vaccine…is a matter of personal judgment, not a religious belief or practice." *Id.* at 9, 11.

During district court proceedings, because the issues were similar, the court consolidated its decision regarding Aspirus's motions to dismiss against Passarella and Dottenwhy. Although each filed separate notices of appeal, this Court consolidated their appeals by order dated April 10, 2023. APP. 18.

## Summary of the Argument

The district court prematurely dismissed the Appellants Passarella's and Dottenwhy's allegations of employment religious discrimination under Title VII at the motion to dismiss stage of the proceedings. The court failed to liberally construe their respective allegations, failed to recognize the religious beliefs are broadly defined, and instead dismissed their complaints because they mentioned concerns about the safety of the COVID-19 vaccines. Passarella and Dottenwhy relied on their religious beliefs and prayer to reach their final decision. They did so despite the threat and later reality of losing their professional jobs.

8

The first element, and only element at issue here, concerns that part of a religious discrimination claim requiring a prima facie showing of the observation or practice conflicting with an employment requirement that is religious in nature. Once met, the burden shifts to the defendant-appellee Aspirus. The district court did not adhere to Rule 12(b)(c) motion principles that well-pled facts must be found to be true and to draw reasonable inferences in favor of the Plaintiffs. Passarella and Dottenwhy explained how their personal religious beliefs were intimately related to their daily living, as helping them to decide decisions affecting their lives. It appears the court believed a particular religious tenet is necessary to declare Passarella's and Dottenwhy's decision against the COVID-19 vaccine. The court erroneously cut across existing precedent of this Court and decided factual questions against Passarella and Dottenwhy, and determining what is or what is not a religious practice, and determined for itself the reasons a person has for holding a particular belief. The court failed, contrary to the U.S. Supreme Court, to give great weight to the validity of Passarella's and Dottenwhy's beliefs that should not be questioned.

Notably, the district court relied upon U.S. Court of Appeals for the Third Circuit decision (and underlying district court decisions) to reach its conclusions, while failing to explore, identify, and rely upon existing Seventh Circuit decisions and U.S. Supreme Court precedent.

Hence, the district court's decision granting Aspirus's motion to dismiss should be reversed.

**Argument**

**The applicable standard of review for a motion to dismiss is *de novo*.**

This Court will review a district court's decision to dismiss a complaint *de novo*, accepting as true the complaint's well-pleaded allegations and drawing all reasonable inferences in the plaintiffs' favor. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) *citing, Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

## I.    At the motion to dismiss stage, courts are to liberally construe allegations of religious beliefs as sincerely held.

This is not a case where Passarella or Dottenwhy have failed to allege that their religious beliefs are sincerely held. *See Johnson v. Do*ty, 15-CV-7823 (KMK), 2019 WL 2137361, at *4 (S.D.N.Y. May 16, 2019) *See, cf. Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988). Indeed, even if there were conflicting allegations, they present factual disputes to be "resolved by the factfinder," not by the Court at the motion -to-dismiss stage. *Id.* (citing *Patrick v. LeFevre*, 745 F.2d 153, 159–60 (2d Cir. 1984)). Accordingly, the district court should have construed Passarella and Dottenwhy's allegations liberally—at this stage of the litigation process—to recognize that Passarella and Dottenwhy had easily satisfied their obligations to allege that their religious beliefs are sincerely held. *See Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *18 (S.D.N.Y. Mar. 30, 2018) ("Construing Plaintiff's allegations liberally, the Court holds that he has sufficiently alleged that his religious beliefs are sincerely held at this stage of the proceedings to survive the Motions To Dismiss."). As this

Court has ruled, "[W]e accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Volling v. Kurtz Paramedic Services, Inc.,* 840 F.3d 378, 382 (7th Cir. 2016).[2] This is particularly necessary because "[c]ourts are not arbiters of scriptural interpretation." *Adeyeye*, 721 F.3d at 453.

As previously described, Passarella's and Dottenwhy's complaints are replete with allegations reflecting their sincerely held religious beliefs. Instead of taking their allegations as true, the district court focused on their "process" to reach their respective decisions and concluded their "objections to the Covid vaccine were based on their medical judgment." APP. 2, Or. at 2. The court then found a lack of "sincere religious conviction," thus, Passarella's and Dottenwhy's religious practices or observances as conflicting with receipt of the vaccine were found to be not "religious in nature." *Id.* at 8. The district court then ruled their pled beliefs were as a matter of law "a matter of personal judgment not a religious belief or practice." *Id.* at 9, *see also, id.* at 11  ([Appellants] "refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons.")

---

[2] Even in a summary judgment proceeding decisions as the "sincerity" of a person's belief are not appropriate because "the lower court's finding on that issue generally will depend on its *assessment of the employee's credibility.*" *E.E.O.C. v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1575 (7th Cir. 1997), *citing In re Krehl,* 86 F.3d 737, 743–44 (7th Cir.1996) (emphasis added).

## II. Passarella and Dottenwhy's complaints sufficiently pled allegations of their sincerely held religious beliefs.

### A. A determination of what is a religion or religious belief is difficult and because courts are not the arbiters of Scriptural interpretation care should be taken not engage in credibility issues at the motion to dismiss stage.

The district court concluded, based upon a hypothetical it created, that both Passarella and Dottenwhy held "no religious belief that would prevent [them] from taking the [COVID-19] vaccine if she believed it was safe." APP. 11, Or. at 11. The court disregarded the interrelationship that both professed between their respective religious beliefs and secular decisions, ignoring their personal deep religious Christian convictions as intimately related to their daily living—secular choices between right and wrong through God's guidance as they interpreted scripture.

Instead, the district court appears to suggest that a particular religious tenet, as the court interprets the appellants' religious beliefs, is necessary to declare their decision about vaccines. By doing so, the district court determines what is and what is not a person's religious practice at the motion to dismiss stage of the proceedings. The district court is in essence questioning the credibility of each plaintiffs' well-pled factual allegations demonstrating their sincerely held religious beliefs. The district court's decision runs afoul of existing precedent and the Federal Rules of Civil Procedure governing motions to dismiss under Rule 12b(6).

To establish a prima facie case of religious discrimination based on the failure

to accommodate, a plaintiff must show that; (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) that she called the religious observance or practice to her employer's attention; and (3) that the religious observance or practice was the basis for her discharge. *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012). Once the plaintiff meets the prima facie threshold, the burden shifts to the defendant to show that any reasonable accommodation would impose an undue burden on defendant. *Id.*

The district court dismissed both Passarella and Dottenwhy's complaints on the first element. The court concluded they failed to establish a *prima facie* showing of their religious beliefs conflicting with employment conditions. In a motion to dismiss stage of court proceedings, identifying the legal landscape of how to approach allegations of sincerely held religious beliefs at the outset, is a necessity. This is especially true since the district court acknowledged no case on point in this Court. App. 11, Or. at 11.

Apparently believing a lack of guidance from this Court, the district court relied upon a Third Circuit case, *Fallon v. Mercy Catholic Med. Ctr. of S.E. Pennsylvania,* 877 F.3d 487, 492 (3d Cir. 2017). Acknowledging that Fallon was not a member of a mainstream religion, the district court nevertheless stated that it didn't matter; "[e]ven if Fallon's overall belief system had been systematic enough and profound enough to constitute a religion, his belief about the flu vaccine was still just a medical judgment about the effectiveness of the vaccine." APP. 12, Or. at 12. Following other

distinguishable Third Circuit district court cases, the district court dismissed the veracity of religious personal convictions embedded in their requests for exemptions.

To begin, Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." *42 U.S.C. § 2000e–2(a)*. Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j). *Peterson v. Wilmur Commc'ns, Inc.,* 205 F. Supp. 2d 1014, 1017–18 (E.D. Wis. 2002).

The term "religion" is *broadly* defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's…religious observance or practice without undue hardship on the conduct of the employers business." 42 U.S.C. § 2000e(j). The statutory definition of "religion" in Title VII as drafted "combines a *broad substantive definition* of religion with an implied duty to accommodate employees' religions … ". *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 448 (7th Cir. 2013) (emphasis added). "Title VII is a remedial statute that we construe liberally in favor of employee protection." *Id.* at 450.

In *United States v. Seeger,* 380 U.S. 163 (1965), a case involving a conscientious objector to military service, the Supreme Court noted the "vast panoply of beliefs" present in this country and interpreted the meaning of religious training and beliefs so as to "embrace all religions." *Seeger,* 380 U.S. at 165, 175. As described, the Equal

14

Employment Opportunity Commission (EEOC) guidelines are similarly broad: "The Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

Indeed, the determination of what is a religion or religious belief "is more often than not a difficult and delicate task." *Thomas v. Review Bd. Of Indiana Employment Sec. Division,* 450 U.S. 707, 714 (1981); *see also Africa v. Com. Of Pa.,* 662 F.2d 1025, 1031 (3rd Cir. 1981) ("Few tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion."). Notably, "Courts are not the arbiters of Scriptural interpretation." *Adeyeye*, 721 F.3d at 453, citing *Thomas*, 450 U.S. at 716. In line with the broad definition of "religious belief" in Title VII, this Court has admonished courts to refrain from determining what is and what is not a religious practice, in a way similar to the Supreme Court's admonition in *United States v. Seeger,* 380 U.S. 163 (1965):

> [W]e note that to restrict the act to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, which by itself perhaps would not be beyond the province of the court, but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. We find such a judicial determination to be irreconcilable with the warning issued by the Supreme Court in *Fowler v. Rhode Island*, 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953), '[I]t is no business of courts to say ... what is a religious practice or activity ...'

*Redmond v. GAF Corp.,* 574 F.2d 897, 900 (7th Cir. 1978).

Likewise, this Court has opined that "the prospect that courts would begin to inquire into the personal reasons an individual has for holding a religious belief would create a slippery slope we have no desire to descend.…It is not within our province to evaluate whether particular religious practices or observances are necessarily orthodox or even mandated by an organized religious hierarchy." *Adeyeye,* 721 F.3d at 452. In other words, the district court was not to restrict narrowly the definition of "religious beliefs" or to deny the "truth" of what appellants pled as their religious beliefs. As the U.S. Supreme Court has declared, "It is not for the Court to say that the religious beliefs of the plaintiffs are mistaken or unreasonable." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 686 (2014).

In *Seeger,* the Supreme Court opined that "the claim of the [individual] that his belief is an essential part of a religious faith must be given great weight" and "[t]he validity of what he believes cannot be questioned." *Seeger*, 380 U.S. at 184. "Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs." *Seeger,* 380 U.S. at 184, quoting *United States v. Ballard*, 322 U.S. 78, 86 (1944). "Scrutiny of the validity of particular beliefs largely is beyond our judicial function because 'religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991) (quoting in part *Thomas,* 450 U.S. at 714. And as this Court has declared with approval, "[t]he validity of what [a person] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question the existence

of the registrant's 'Supreme Being' or the truth of his concepts. But these inquiries are foreclosed to Government." *Adeyeye*, 721 F.3d at 448, quoting *Seeger*, 380 U.S. at 184.[3]

Key to a court's analysis is whether a person's religious belief is "truly held." "While the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact...." *Seeger,* 380 U.S. at 185. *See also, e.g., Africa,* 662 F.2d 1025; *Stevens v. Berger*, 428 F. Supp. 896 (E.D.N.Y. 1977); Riga, *Religious, Sincerity, and Free Exercise,* 25 Catholic Lawyer 246 (1980).

What Passarella and Dottenwhy described in their respective allegations was how their religious beliefs was something they live and is inside themselves; how they feel the world is interconnected in such a way that they cannot separate their concept

---

[3] The U.S. Court of Appeals for the Fifth Circuit has a diametrically different approach to the district court and more in line with U.S. Supreme Court precedent. For example, the Fifth Circuit has held that the analysis for the religious nature of a belief does not turn on the veracity of a belief. *See Brown v. Resor,* 407 F.2d 281, 288 (5th Cir.1969). Rather, the focus should be whether a belief, in the person's own scheme of things, is religious. *Theriault v. Carlson,* 495 F.2d 390, 394 (5th Cir.1974). A religious belief is one which is based on a theory of "man's nature or his place in the Universe." *Brown v. Dade Christian Schools, Inc.,* 556 F.2d 310, 324 (5th Cir.1977) (Roney, J., dissenting). "All forms and aspects of religion, however eccentric, are protected except those that cannot be, in practice and with [honest effort], reconciled with a businesslike operation." *Cooper v. General Dynamics,* 533 F.2d 163, 168–69 (5th Cir.1976). Thus, sincerely held personal convictions, which others find nonsensical, may still fit within the framework of a religious belief. On the other hand, it must be recognized that there is a rational limit to what courts are willing to accept as religious beliefs. *See, e.g., Brown v. Pena,* 441 F.Supp. 1382, 1385 (S.D.Fla.1977) (holding plaintiff's "personal religious creed" of eating Kozy Kitten cat food was a personal preference and not a religious belief).

of God with what is inside them and around them. To Passarella and Dottenwhy, as they alleged, their religious beliefs are not a "temple", meaning a physical building, and religion is not something that is outside of themselves, but something that they live and is inside of themselves—such as, declaring their body as a temple.

### III.    Dottenwhy and Passarella sufficiently pled allegations showing how their sincerely held religious beliefs were in conflict with Aspirus's condition of employment to take the COVID-19 vaccine.

Passarella pled that her "sincerely held religious beliefs prohibited her from taking the Covid-19 vaccine." *Passarella Compl. ¶ 1, 20. See similarly, Dottenwhy Compl. ¶¶ 2, 19.* Passarella submitted to Aspirus a five-page explanation supporting her request for a religious exemption from taking the COVID--19 vaccine. *Passarella Compl. ¶ 25, Ex. 1.*

Passarella's Statement of "Deeply Held Religious Belief" reflects her personal relationship with God, and her interpretation of Scripture. She revealed how her interpretation of Scripture affects her conscience and how it is part of her daily life and decision-making. It reflects how she seeks God's guidance, and in God speaking to her how she chooses God over secular opinions. If she has doubts of the secular world, she seeks God's guidance:

- "I must use my body to glorify God;"

- "[M]y ultimate protection, care, and healing comes from the Lord;"

- "I must trust God with my body (His Temple) and that he will provide for me and protect me;"

- "Receiving the vaccine would not be acting in accordance with God.  It would be a sin for me to receive it;"

- "My duty to God is to reasonably preserve my body, not endanger it;"

*Passarella Comp. Ex. 1.*

Indeed, what the district court failed to note was that Aspirus had not challenged Passarella's religious beliefs.  Aspirus instead conceded Passarella's "Deeply Held Religious Belief" letter, which was replete with references to her religious beliefs, and assertions of them as sincerely held. *Aspirus Mot. to Dismiss Memo. 2-4.* This concession should have ended the discussion but, it did not. Instead, the court's decision requires this Court to review what the district court should and should not inquire about at the motion to dismiss stage.

To begin, Passarella describes her Christian belief, acknowledging a deity, and demonstrating how she contemplates deep issues of life, and proceeds to order her life according to what God has revealed to her. Passarella's objections to the COVID-19 vaccine were based upon her religious beliefs and hence, were "religious in nature."

Dottenwhy pled similarly to Passarella, albeit more directly and succinctly. She did not shy from her Christian beliefs as "a Christian who believes, as she has discerned from prayer and study of Scripture, that her body is a Temple of the Holy Spirit." *Dottenwhy Compl. ¶ 19.* Dottenwhy also expressed how Aspirus' guidelines regarding her request for a religious exemption, prevented her from properly

composing her religious beliefs reflecting God's guidance in her life, resulting in a decision not to take the COVID-19 vaccine. *Id.* As Dottenwhy did try to explain, taking the vaccine would violate the sanctity of her religious conscience and her God given body. *Id.,* ¶¶ 19, 22. "[A]s always Christ will be exalted in my body, whether by life or death…. My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God…." *Id.* at Ex. A.

Both Passarella's and Dottenwhy's reverence to Scripture, as they interpret it, led them to reject the COVID-19 vaccine. As they pled, each acknowledged their bodies as temples of God as a "religious observance and practice, as well as belief," and recognizing a secular debate on the safety of the vaccine, they acted according to their interpretation of Scripture and God's guidance.

In addition, because the standard of a sincerely held religious belief is "broadly defined," and the "observance or practice conflicting with the employment requirement" only has to be "religious in nature," the district court cannot substitute its interpretation of Passarella's and Dottenwhy's religious beliefs as pled. At this stage of the litigation, in a motion to dismiss, the district court should not have restricted or disputed Passarella's or Dottenwhy's assertions of their religious beliefs—taken as true— or denied that they held them sincerely. Because the employee's credibility must be assessed to determine whether Passarella and Dottenwhy held sincere religious beliefs, it was not appropriate for the district court to dismiss their well-pled factual allegations.

**A.      The Sincerity of Appellants' Religious beliefs are Fact Issues Appropriate for Trial, Not a Motion to Dismiss.**

Title VII's capacious definition of "religion" includes "all aspects of religious observance and practice, as well as belief...." 42 U.S.C. § 2000e(j); *see also* 29 C.F.R. § 1605.1 ("[R]eligious practices ... include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."). Religious beliefs protected by Title VII need not be "acceptable, logical, consistent, or comprehensible to others...." *Thomas,* 450 U.S. at 714. "The statute [Title VII] thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs."  *See, E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion."  42 U.S.C. § 2000e–2(a). Religion is broadly defined. *Id.* § 2000e(j); *Peterson,* 205 F. Supp. 2d at 1017–18. Notably, the district court conceded that Passarella and Dottenwhy merely had to show the "practice or observance" that conflicts with the employment requirement to take a COVID vaccine was "religious in nature." APP. 8, Or. at *citing Porter* 700 F.3d at 951.  *See also, Adeyeye*, 721 F.3d at 449. As courts have observed, "Title VII is a remedial statute that we construe liberally in favor of employee protection." *Adeyeye*, 721 F.3d at 450.

**B.　Passarella's and Dottenwhy's Practices or Observances conflicting with the Appellee's Vaccine Mandate were "religious in nature."**

Passarella's and Dottenwhy's allegations revealed their practices or observations regarding their respective religious beliefs, conflicted with Aspirus's vaccine mandate, hence, were "religious in nature." The term "religion" is *broadly* defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's…religious observance or practice without undue hardship on the conduct of the employers business." 42 U.S.C. § 2000e(j).

This Court, in *Adeyeye*, further recognized a distinction between "traditionally religious" or "orthodox belief in God" on the one hand, and a belief system which "occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *Adeyeye*, 721 F.3d at 448. "We recognize, of course, that the religious beliefs and practices *Adeyeye* referred to are not as *familiar* as beliefs and practices closer to the modern American *mainstream*. But the protections of Title VII are not limited to *familiar religions*." *Adeyeye*, 721 F.3d at 451 (emphasis added), citing *Redmond,* 574 F.2d at 900–01 (Title VII protects conduct that is "religiously motivated" and includes "all forms and aspects of religion, however eccentric"), quoting *Cooper v. General Dynamics,* 533 F.2d 163, 168 (5th Cir.1976).

Therefore, following a "*familiar*," "traditional," "*mainstream*," or "orthodox" religion can satisfies the requirements of Title VII, to meet the "religious in nature"

test.  Notably, following a "mainstream" religion is not required in order to make a Title VII claim.  Even followers of non-traditional or "eccentric" religions or beliefs can be found to hold sincerely held religious beliefs for purposes of Title VII.  The test "is whether a given belief that is sincere and meaningful *occupies a place* in the life of its possessor *parallel to that filled by the orthodox belief in God*." *Adeyeye*, 721 F.3d at 448 (emphasis added), citing *Seeger*, 380 U.S. at 165–66.  *See also*, *Kaufman v. McCaughtry*, 419 F3d 678, 681 (7th Cir. 2005).  The test can be met by showing that the belief at issue is "'sincerely held' " and "'religious' in [his or her] own scheme of things." *Adeyeye* 721 F.3d at 448, citing *Redmond*, 574 F.2d at 901 n. 12, (quoting *Seeger*, 380 U.S. at 185).  A genuinely held belief that leads its adherents to contemplate matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII.  Those beliefs represent the religion of the non-mainstream adherent. *Adeyeye*, 721 F.3d at 448.

Thus, there are at least two ways to establish sincerely held "religious in nature" beliefs under Title VII: (1) to sincerely hold beliefs of a traditional, "mainstream," or "orthodox" religion, or (2) to genuinely hold beliefs that "occupy a place parallel to that filled by God in traditionally religious persons."  Passarella and Dottenwhy meet both tests: they meet the first test, because they have asserted beliefs in Christianity, an "orthodox," "mainstream," religion; and they also meet the second test because of the extensive pleading they made, clearly establishing the criteria necessary to meet the second test.

i.    **Passarella and Dottenwhy identify themselves as Christians and their sincerely held beliefs to Christian tenets.**

Passarella and Dottenwhy pled repeatedly that they are Christians and sincerely believe the set of beliefs that led them to refuse to take the vaccine.  Their beliefs are "religious in nature," they sincerely hold those beliefs, and those beliefs precluded taking the vaccine. *Passarella Compl. ¶¶ 1, 20; Dottenwhy Compl. ¶¶ 2, 19.* This Court recognizes that a "mainstream," or "orthodox" belief in a recognized religion includes "genuinely held belief that involves matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII." *Adeyeye,* at 451; s*ee also Fallon v. Mercy Cath. Med. Ctr. Of Se. Pennsylvania,* 877 F.3d 487, 492(3rd Cit. 2017)(recognizing religions that are "a more traditional faith.")

The broad definition applies to all religious beliefs that are sincerely held: "In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith *must be given great weight.....* The *validity of what he believes cannot be questioned.* Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts. But these inquiries are foreclosed to Government." *Seeger,* 380 U.S. at 184 (emphasis added).

Other circuit courts precedent confirms that religions which focus on "fundamental concerns," claim to be "theistic," or recognize a "Supreme Being," take positions on "morality" and the "meaning and purpose of life," are recognized

religions that give rise to sincerely held religious beliefs. *Africa v. Commonwealth of Pa.,* 662 F.2d 1025, 1031 (3d Cir.1981), and *U.S. v. Meyers*, 95 F.3d 1475 (10th Cir 1996).

For example, in *Africa*, a prisoner who claimed to be a "Naturalist Minister" for the "MOVE organization" sued to force the prison to "provide him with a special diet consisting entirely of raw foods. He maintained that to eat anything other than raw foods would be a violation of his 'religion.'" *Africa*, 662 F.2d at 1025. The appellate court rejected Africa's claim that MOVE was a religion:

> MOVE makes no mention of, much less places any emphasis upon, what might be classified as a fundamental concern. MOVE does not claim to be theistic: indeed it recognizes no Supreme Being and refers to no transcendental or all-controlling force. Moreover, unlike other recognized religions, with which it is to be compared for first amendment purposes, MOVE does not appear to take a position with respect to matters of personal morality, human mortality, or the meaning and purpose of life. The organization, for example, has no functional equivalent of the Ten Commandments, the New Testament Gospels, the Muslim Koran, Hinduism's Veda, or Transcendental Meditation's Science of Creative Intelligence. …Given this lack of commitment to overarching principles, the MOVE philosophy is not sufficiently analogous to more "traditional" theologies.

*Africa,* 662 F.2d at 1033.

In *Meyers*, the Tenth Circuit similarly rejected that the plaintiff had asserted a sincerely held religious belief. Meyers expressed that his beliefs in the tenets of the "Church of Marijuana" constituted a sincerely held religious belief. *Meyers*, 95 F.3d at 1483. The court rejected this idea, finding that the Meyers' "religion" did not meet any of the indicia of a religion, such as "ultimate beliefs," "moral or ethical beliefs," "comprehensiveness of beliefs," "external signs," or "important writings." The court

wrote that Meyers "professed beliefs have an ad hoc quality that neatly justify his

desire to smoke marijuana." *Meyers*, 95 F.3d at 1482-1484.

In short, the cases that deny a party held a sincere religious belief did so

because the "religion" was not an "orthodox," "traditional," or "mainstream" religion,

*and do not even claim* to be "theistic," do not address "fundamental" concerns, and do

not have positions on "morality" or "mortality," or the "purpose of life." *Africa,* 662

F.2d at 1033. Here, the Passarella and Dottenwhy cases are diametrically different

from the cases holding there was no sincerely held religious beliefs.

Passarella and Dottenwhy pled their Christian beliefs. Moreover, Christianity

comprises numerous denominations. *Am. Legion v. Am. Humanist Assn.*, 139 S.Ct.

2067, 2107 n.7 (June 20, 2019). As the U.S. Supreme Court has opined,

> "For nearly two millennia," the Latin cross has been the "defining
> symbol" of Christianity, R. Jensen, The Cross: History, Art, and
> Controversy ix (2017), evoking the foundational claims of that
> faith. Christianity teaches that Jesus Christ was "a divine Savior"
> who "illuminate[d] a path toward salvation and redemption."
> ….[citation omitted]. Central to the religion are the beliefs that
> "the son of God," Jesus Christ, "died on the cross," that "he rose
> from the dead," and that "his death and resurrection offer the
> possibility of eternal life." …. "From its earliest times,"
> Christianity was known as *religio crucis*—the religion of the cross."
> R. Viladesau, The Beauty of the Cross: The Passion of Christ in
> Theology and the Arts, From the Catacombs to the Eve of the
> Renaissance 7 (2006).

*Id.*

Although having different denominations, "Christianity is the most widely

practiced religion in the world, with more than 2 billion followers. The Christian faith

26

centers on beliefs regarding the birth, life, death and resurrection of Jesus Christ." *See e.g..,* https://www.history.com/topics/religion/history-of-christianity (last visited May 12, 2023). Christianity is an "orthodox," "mainstream" religion and a "traditional" religion. Christianity claims a "deity," God the Father, Son (Jesus Christ), and Holy Spirit. It claims to be, and is, "theistic." Christianity has positions on "morality," "mortality," the "purpose of life," and other questions Courts evaluate in deciding whether a religion is a religion *Id.*

Passarella and Dottenwhy strongly identify with the Christian faith as alleged. On the other hand, Aspirus offered nothing to dispute or contradict either Passarella's or Dottenwhy's claims of their religious beliefs, yet, the district court simply concluded their beliefs as "non-religious." APP. 4, 10, Or. at 4, 10.  The court did not disprove Passarella's or Dottenwhy's concerns for health and safety arose from their personal interpretations of Scripture. The court, at this stage of the proceedings, disregarded the allegations, disagreeing with Passarella's and Dottenwhy's reliance upon God's Word and branded their religious based decision as a "medical judgment." *Order* pp. 2, 11.

Passarella specifically identified her "Deeply Held Religious Belief," which is a statement of her religious beliefs, the sincerity of those beliefs, and her explanation of why she cannot allow the vaccine into her body, the Temple of God. *Passarella Compl. Ex. 1, at 3.*  This Statement on its own easily meets the threshold of a "sincerely held religious belief."

Appellant Dottenwhy similarly pled her Christian beliefs, and that they were sincerely held. *Dottenwhy Comp.* ¶¶ *2, 19, 25, 37*. Both Passarella's and Dottenwhy's belief in the sanctity of their bodies which requires them to be careful with what they put into their bodies, and to evaluate risks and benefits. Here, their personal religious based decision regarding the COVID-19 vaccine is in line with and similar to widely held Christian beliefs.[4]

Passarella and Dottenwhy argues that their religious beliefs are supposed to be "given great weight," and the "validity of what" Appellants' believe "cannot be questioned." See, *Seeger* 380 U.S. at 184. The District court mistakenly opined that Passarella and Dottenwhy failed to establish that their objections to receiving the vaccine were because of a "sincere religious conviction" to meet the first element of their respective Title VII claims. *See* APP. 2, Or. at 2.

> **ii.    If there was any doubt of Passarella's and Dottenwhy's religious beliefs were sincerely held, the foundation of their believes include a "deity," "involve matters of the afterlife, spirituality," the "soul," deal with issues of "ultimate concern" and "occupy a place parallel to that filled by God in traditionally religious persons."**

While it should be sufficient for Passarella and Dottenwhy to meet the definition of a "mainstream," traditional or "orthodox" religion, which provides a

---

[4] The district court was unkind to describe Passarella's beliefs "shrewd," (APP. 11, Or. at 11.) and found this demonstrated "nonreligion." The court's conclusion negates how Passarella chose to explain to an entity—Aspirus—how her religious beliefs interplay with daily decision-making when faced with difficult life decisions. In short, the court is punishing Passarella for her short-comings in expressing her religious beliefs. *See e.g.,* Compl. Ex. 1, at 3.

source of their religious beliefs, their beliefs also meet the alternative definition of a sincerely held religious belief. That is because their beliefs include a "deity," involve matters of the "afterlife, spirituality, or the soul," and deal with "issues of ultimate concern." *Adeyeye*, 721 F3d at 448, citing *Kaufman,* 419 F.3d at 681. Further, "when a person sincerely holds beliefs dealing with issues of ultimate concern that for her *occupy a place parallel to that filled by God in traditionally religious persons, those beliefs represent her religion.*" *Kaufman,* 419 F.3d at 681 (emphasis added). "A personal religious faith is entitled to as much protection as one espoused by an organized group." *Adeyeye*, 721 F.3d at 452, citing *Vinning–El v. Evans,* 657 F.3d 591, 593 (7th Cir.2011). Appellants met this standard as well.

Passarella and Dottenwhy simply had to plead that their beliefs "occupy the same place" in their lives, as "orthodox belief in God holds in the life" of traditional religions. They pled their beliefs as believers of Christianity, *and* that their beliefs relate to "ultimate concerns," the "afterlife," the condition of their relationship with God and their "soul," and "spirituality." *Adeyeye,* 721 F.3d at 448. Moreover, their religious beliefs are "comprehensive in nature." *Fallon*, 877 F.3d at 492. In this case, Passarella and Dottenwhy pled that their safety and health concerns were part of their religious beliefs and "scheme of things." They believed, based upon their religious beliefs and interpretation of scripture that taking the COVID-19 vaccine was wrong, sinful, and put their souls in danger.

Even if Passarella and Dottenwhy had not pled and professed Christian beliefs, or the district court had some concern about whether their Christian religion was "traditional," "mainstream," or "orthodox," because of established Seventh Circuit precedent, it was obligated to find that Passarella and Dottenwhy had sufficiently pled sincerely held religious beliefs.

### C.     The District court's Analysis Demonstrated Clear Error By Applying the Incorrect Standard.

The district court started its analysis properly by citing the correct cases and principles, but ended up not applying those correct rules and erroneously applying inapposite law.  The court recognized that "[r]eligion is … defined broadly under Title VII." APP. 9, Or. at 9 ("for purposes of Aspirus's motion, the court construes the concept of religion broadly.")  The court acknowledged that a "plaintiffs' assertion that '[her] belief is an essential part of a religious faith must be given great weight." *Id.*, citing *Adeyeye*, 721 F3d at 448, quoting *Seeger*, 380 U.S. at 184.  "The court does not concern itself with the truth or validity of religious belief." *Id.*, citing *Adeyeye* and *Seeger*.  The court also cited EEOC guidelines which states that "objections to a Covid-19 vaccination requirement that are **purely** based on … nonreligious concerns … do not qualify as religious beliefs."  *Id.* at 10. (emphasis added), citing *What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (last updated July 12, 2022)."

The district court recognized that "a religious belief that 'overlap[s]' with a political view is still protected by Title VII, so long as the view '*is part of a comprehensive religious belief system and is not simply an isolated teaching.*" APP. 10, Or. at 10, citing EEOC Guidelines (emphasis added). Therefore, if Passarella's and Dottenwhy's objections to taking the vaccine were *even* partially based on a "nonreligious concern" it would still be considered a religious belief. The court's logic and reasoning confirmed that a religious belief that "overlaps" with a "political view is still protected by Title VII" so long as the mixed religious/political belief is part of a "*comprehensive* religious belief system" and not "simply an isolated teaching." *Id.* at 10. (emphasis added). In the end, while the court cited correct law, its analysis was mistaken.

The court then mistakenly found, for example, Dottenwhy's "request [for a religious exemption] [ ] predicated *fundamentally* on her concerns with the safety of the vaccine and her right to bodily integrity." (emphasis added).[5] That statement demonstrates that the court made a factual finding that some part of her belief was religious but that more of it was based on safety, which the court found was

---

[5] Part of Passarella's reason for asserting her request for a religious exemption as she did was fear that if she provided a full explanation her request would automatically be rejected. She stated: "While I could elaborate further on why this [Vaccine Mandate] goes against my faith, the stipulations of the exemption request [Appellee's "Important Guidance Relating to Completing this Submission."] indicate I may only list just one." *Passarella Compl. ¶ 19, Ex. 1 at 5.* Thus, to the extent the court was dissatisfied with the way Passarella or Dottenwhy pled their religious beliefs, these shortcomings were caused by Aspirus's draconian restrictions on the exemption process.

nonreligious.  Therefore, the court determined Dottenwhy's beliefs were "predicated *fundamentally* on her concerns with the safety of the vaccine."  This is inappropriate at the motion to dismiss stage.  The court's determination of what it believes Dottenwhy's primary or "*fundamental*" nature of her objection differed and erred from the legal standard the court had previously articulated in the Order, which required a "*purely*" nonreligious reason before denying the sincerity of the religious belief.  The court substituted "*fundamentally*" in place of "*purely*" nonreligious to eviscerate the legal standard.

Further, the court ignored Passarella's and Dottenwhy's own descriptions of their beliefs, instead of giving their assertions "great weight." Instead, the court determined for itself their "fundamental" and tertiary beliefs, which is contrary to the law.

There was no basis for the court to have found that Passarella's and Dottenwhy's beliefs were "non-religious"—either "purely" non-religious, or "fundamentally" non-religious. Their respective pleadings allegations sufficiently expressed their beliefs as grounded in their Christianity.  The court erred by using the wrong standard, and by substituting its own judgment in place of the clearly pled facts.

**D.    Passarella's and Dottenwhy's expressed health concerns overlapped with their religious beliefs.**

In addition to the mistaken analysis of the district court cited above, it also

ignored Passarella's and Dottenwhy's beliefs that lead them to decide not to be vaccinated as part of their sincerely held religious beliefs, or at least mixed beliefs of "overlapping" "religious" and "medical" or other "beliefs." The court recognized that such mixed beliefs would still result in protection under Title VII. APP. 10 at Or. 10, citing *EEOC rules*. But the court abandoned this standard, ignoring that Passarella and Dottenwhy pled that the vaccine violated their religious beliefs, or at least their safety and health concerns for the vaccine could be part of overlapping beliefs. The court instead determined that safety or health concerns could not be "religious in nature." Again, the district court mistakenly erred in making the decision at the motion to dismiss stage that Passarella's and Dottenwhy's pled beliefs could not be an "overlapping" of "religious" and "medical" beliefs.

Further, as the court recognized, the "overlapping" of beliefs can be part of determining whether a belief is part of a "*comprehensive* religious belief system" or "simply an isolated teaching." APP. 10, Or. at 10. But neither Aspirus nor the court made any attempt to determine whether Passarella and Dottenwhy had a "comprehensive religious belief system," or alternatively whether Passarella's and Dottenwhy's beliefs were based on "an isolated teaching." The court simply took each of their individual reasons and allocated it to its own silo, and then labeled each as "non-religious."

As pled extensively, Aspirus engaged in no "interactive process," or "dialogue" with Appellants regarding their beliefs. Aspirus did not even ask any questions about

Appellants' religious exemption. *Passarella Compl.* ¶¶ *2, 22, 23, 24; Dottenwhy Compl.* ¶¶ *2, 24.* Aspirus sought no clarification of Passarella's and Dottenwhy's beliefs, or asked any questions of their respective beliefs in God, prayer, the Holy Spirit, or conscience. *Id.* Aspirus did not ask Passarella's or Dottenwhy's how frequently they attend church services, read the bible, or pray. Aspirus did not make any other objective attempt to measure the sincerity of Passarella's and Dottenwhy's beliefs or determine a proportion of their beliefs were religious versus nonreligious. The court therefore, had no basis from which to challenge or reject the sincerity of Passarella's and Dottenwhy's pled religious beliefs, or to determine if they "overlapped" or mixed with religious beliefs, or were part of comprehensive belief systems and therefore "religious in nature."

Traditional and authentic religions generally do involve "comprehensive" beliefs, and not just random "isolated teachings." Christianity is not merely a few "isolated teachings" or random ideas (APP. 10, Or. at 10), but rather is a comprehensive belief system in which adherents are to live according to many principles: i.e. the Ten Commandments, love your neighbor as yourself, do unto others as you would have them do unto you, love your enemies, and turn the other cheek, etc. Even the Ten Commandments are not only 10 Commandments, but contain many instructions and teachings inside of them. "Thou Shall Not Bear False Witness Against Thy Neighbor" for example, bars lying, but also prohibits gossiping, spreading rumors, and testifying falsely, and many other things. The Bible and

established Christian principles are widespread and comprehensive.  The district court's decision would put each belief into its own separate silo, brand that silo as "religious," "medical," "personal," "logic," or any other category a court could fashion, and disregard established law.

The court made no effort to determine if appellants' concerns for their safety and health could have "overlapped" with appellants' religious beliefs.

### E.    Passarella's and Dottenwhy's concerns about safety and health are part of their religious beliefs.

Passarella's and Dottenwhy's pled traditional religious beliefs, *and that they were gravely concerned about the* safety *of the vaccines, and the potential harm to their health.  See, Passarella Compl. Ex. 1, at 3, "there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine." "My Duty to God is to reasonably preserve my health, not endanger it,"* and there *"is additional evidence available and worthy of consideration that the vaccines could pose a danger to my body in the form of blood clots or heart inflammation." Passarella Compl. Ex. 1 at 4.*

Dottenwhy similarly pled her concerns for her health, and that tie to her religion.  She wrote: *"I am fearful of the effects." "I feel the Covid vaccine was developed in haste and I don't trust the information and the long term effects that may come about.  Therefore I am not comfortable putting this vaccine into my body."* The *"Covid vaccine was developed too quickly.  Not*

*enough time for deep study.*" Dottenwhy Opp. Memo. to Dismiss, Ex. A. That there are

dangers to the vaccines is not disputable.[6]

Having substantial medical and scientific concerns regarding immunization

does not make Dottenwhy's and Passarella's religious convictions any less sincere and

authentic. A court in Virginia addressed this very issue and came to the opposite

conclusion as the district court here: "Mrs. Grzyb also has substantial medical and

scientific concerns regarding immunization, **but that does not make her religious**

**convictions any less sincere and authentic.**" *Grzyb v. Grzyb*, 79 Va. Cir. 93 (2009);

2009 WL 7388854 (emphasis added).

---

[6] **Pfizer**: severe allergic reaction; rash, itching, hives, or swelling of the face; myocarditis (inflammation of the heart muscle) and pericarditis (inflammation of the lining outside the heart); injection site pain, tiredness, headache, muscle pain, chills, joint pain, fever, injection site swelling, injection site redness, nausea, feeling unwell, swollen lymph nodes, diarrhea, vomiting, and arm pain have occurred according to Pfizer's Fact Sheet. https://labeling.pfizer.com/ShowLabeling.aspx?id=14477. (revised 8 December 2022) (last accessed 5/15/23); **Moderna:** "injection site pain, tenderness and swelling of the lymph nodes in the same arm of the injection, swelling (hardness), and redness; fatigue; headache; muscle pain; joint pain; chills; nausea and vomiting; fever; and rash. … Cases of myocarditis and pericarditis have rarely been reported in some people." https://www.cdc.gov/vaccines/covid-19/eui/download/Moderna-Caregive.pdf. (version 9/02/2022) (last accessed 12/9/22). **Johnson & Johnson**: injection site reactions including pain, redness of the skin and swelling; headache, feeling very tired, muscle aches, nausea, and fever; swollen lymph nodes, blood clots; unusual feeling in the skin such as tingling, persistent ringing in the ears (tinnitus); diarrhea, vomiting; severe allergic reaction, including difficulty breathing, swelling of face and throat, fast heartbeat, bad rash, dizziness and weakness; shortness of breath, chest pain, leg swelling, persistent abdominal pain, severe or persistent headaches or blurred vision, easy bruising; thrombosis with thrombocytopenia, Guillain-Barre syndrome. https://www.fda.gov/media/146305/download (revised May 5, 2022) (last accessed 12/9/22).

A federal court in New York correctly came to a similar conclusion:

"Louis Levy's affidavit reiterates the family's beliefs and during his testimony Levy stated, among other things, that, "to us [Louis and Valerie Levy] **religion is not part and parcel**, religion is not a temple, religion is not something that is outside of ourselves, something that we live and it's inside of ourselves. It's something that we feel the world in such a way that is **interconnected**; that **we can't separate our concept of God with what is inside of us and around us**," and that "[w]e take the **same concept about religion into the field of health**.... We feel that any introduction into that process of a foreign element outside the normal processes of the body, **is going to [a]ffect the body adversely and, therefore, we feel it is a violation in a sense of our nature, physical, spiritual religious nature**." (Record at 56, 59, 60–61)."

*Sherr v. Northport-E. Northport Union Free Sch. Dist.,* 672 F. Supp. 81, 93 (E.D.N.Y. 1987) (emphasis added).

The District court disregarded Passarella's and Dottenwhy's pleadings and held that Appellants' "*objections to the Covid vaccine were based on their **medical** judgment that the vaccine was unsafe.*" APP. 2, Or. at 2. The district court stated: "there is no religious belief that would prevent Passarella from the vaccine if she believed it was safe." APP. at 11, Or. at 11. But evaluating the "safety" of what she, and Dottenwhy put into their bodies is central to their religious beliefs.

All major religious are against "self-harm" or suicide. Passarella and Dottenwhy, as Christians, hold these same beliefs, and are not to harm themselves. It is part of the Commandment Thou Shalt Not Kill, which applies to barring suicide, taking risky drugs, or taking unnecessary chances with your own life. They determined that taking the vaccine constitutes a dangerous risk to their health, and also violates their beliefs that they must treat their bodies as a Temple of God.

Passarella and Dottenwhy cited prayer and Scripture, and recognize they need to be careful with what they put into their bodies. If Passarella and Dottenwhy, as medical professionals believe the vaccine could harm their bodies, how could their medical and safety concerns not "overlap" with their religious beliefs?

The fact that Passarella and Dottenwhy see the vaccine as insufficiently safe or insufficiently tested does not contradict their claim that their religion prohibits taking the vaccine—it bolsters it. Their religious beliefs prohibit them from taking untested or unsafe substances like the vaccine—just like their religious beliefs would prohibit them from putting opioids, cocaine or fentanyl into their bodies. It is a medical reason, but also a religious reason.

The district court thus rejected Passarella's and Dottenwhy's beliefs that their bodies are a Temple, and that they cannot consistent with their religious beliefs put harmful materials into their bodies—that such a thing is "unsafe," and not "medically" sound, and may not be effective. The court disregarded their beliefs that it is a sin to put unsafe or harmful materials into their bodies. The court further disregarded the "broad" construction of religious beliefs under Title VII, and that courts are not to argue with the "truth" of Passarella's and Dottenwhy's beliefs, or to substitute the court's beliefs in place of the litigants' beliefs.

The district court's error also presumes that Passarella and Dottenwhy can only have one basis for objecting to the vaccine, and not multiple reasons. In determining that their beliefs were "medical," (APP. 2, Or. at 2) the district court reached a

conclusion that Passarella's and Dottenwhy's reasons for objection cannot be multiple things at once, which is contrary to the court's recognition of "overlapping" beliefs. APP. 10, Or. at 10.

The district court's reasoning is akin to a decision that a person can only dislike the winter weather in Wisconsin because it is: 1) too cold, or 2) too snowy, but not both. According to the court's reasoning, scientists who say Mars is too cold *and* too dry to support life, would be wrong, because according to the district court you can only have one reason supporting a particular belief. Mars is either too cold *or* too dry, but it cannot be both. The district court's reasoning is fundamentally illogical and incorrect.

Passarella and Dottenwhy position is that: 1) the Vaccine Mandate is not medically supported to their satisfaction ("there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine," and the "vaccines could pose a danger to my body in the form of blood clots or heart inflammation"); and, 2) that Appellants' religious beliefs prevented them from personally taking the vaccine because to do so would make them defile their "*temple*" – i.e., body. ("My duty to God is to reasonably preserve my health, not endanger it."). Both objections are consistent and lead to the same result— Passarella and Dottenwhy could not take the vaccine.

In deciding that the practice or observance conflicting with the employment requirement is not "religious in nature," APP. 8, Or. at 8 the district court simply substituted its judgment in place of Passarella's and Dottenwhy's beliefs and pleading.

**F.    Aspirus's policy and process denied Passarella and Dottenwhy the means to fully express their religious beliefs as it related to difficult decisions.**

**Aspirus process ensured failure to obtain an exemption for Passarella and Dottenwhy**

Passarella and Dottenwhy  pled that Aspirus's  religious exemption process was set up to hamstring and essentially guarantee that their  and  other employees' requests for religious exemptions would be denied, thus violating Passarella's and Dottenwhy's religious rights.  *Compl. ¶¶ 21, 22, 40, 41.*  Passarella stated that "While I could elaborate further on why this [vaccine] goes against my faith, the stipulations of the exemption request [Aspirus' rules] indicate I may only list just one."  *Passarella Compl. Ex. 1, at 5.*  Aspirus's process prevented Passarella and Dottenwhy from identifying their full, comprehensive religious beliefs.  Hence, they pled the defects with Aspirus' policy of examining religious rights.  *See, Passarella Compl. ¶¶ 19, 21-22, 38, 40, 41, 42; Dottenwhy Compl. ¶¶ 18, 19, 20, 21, 37, 38.*

Aspirus' Vaccine Mandate for a religious exemption provided:

**Important Guidance Relating to Completing this Submission**

Applicants are encouraged to following the following *guidance* in completing this form. The information solicited is intended to permit a decision on the application in a timely manner, and <u>*non-compliance with this guidance*</u> may result in either a <u>*denial of the request*</u> or the *initiation of an interactive process.*

Please cite *a <u>primary or **single reason**</u>* or sincerely held belief related to your exemption to the vaccine. *If multiple reasons are submitted, you <u>may be denied an exemption</u>*; if one of the reasons contains information

or rationale that fails to support the application. Please understand that *the evaluation is a secular (non-religious) process*, and that submissions should be submitted in a manner that in plain language ties a sincerely held religious belief to the objection to the COVID-19 vaccine. *Citing scripture or sacred texts, which are subject to interpretation*, without a clear explanation or connection between the sincerely held religious belief or principles and vaccination *will not support* the *evaluation*.

Please know that including *misinformation (not supported by widely accepted medical or scientific information) or including non-religious rationale anywhere in the submission will likely result in denial.* Examples include:

*Misinformation* such as microchip, magnets, DNA-altering technology, use of animal cells or tissue in vaccine development, the *presences of fetal cells or tissue in the vaccine*, adverse impact on fertility, and **lack of safety or efficacy** *information* (see myths addressed by the CDC)

Proposing legal arguments including the *constitutional*, regulatory, or privacy justification for vaccine exemption.

Social, philosophical, political, or economic beliefs. Exemption requests must present clear connection between a sincerely held religious belief or principles and vaccination.

*Passarella Compl. ¶¶ 19; Dottenwhy Compl. ¶ 18 (emphasis added).*

Thus, Aspirus placed many restrictions on what Passarella and Dottenwhy could claim regarding their religious objections to the vaccines. According to the language above, Passarella and Dottenwhy were "encouraged" to comply with Aspirus's "Guidance," or else they risked that their religious exemptions would be "denied." Passarella and Dottenwhy pled that Aspirus' "Guidance" above constituted "*unlawful restrictions*" on the religious exemption process. *Compl. ¶¶ 22, 41.* Aspirus

admitted that its religious exemption process "*is a secular (non-religious) process*." *Compl. ¶¶ 18, 38.*

The district court cited favorably to Aspirus' warnings to Passarella and Dottenwhy to completely segregate "religious" from "non-religious" rationales for their objections to the vaccine. "Aspirus told employees that requests including non-religious rationales anywhere in the submission will likely result in denial." APP. 4, Or. at 4. The court also cited favorably to appellees "examples of non-religious rationale" which included "lack of safety or efficacy information." *Id.* The court thus decided as a matter of law that health, safety, or medical concerns could not be a religious belief. The district court also stated that Passarella's and Dottenwhy's "concern for the safety of the vaccine, … is a matter of personal judgment, not a religious belief or practice." *Id.,* at 9. And thus, the court concluded Passarella's and Dottenwhy's refusal to take the vaccine based on their personal judgments about vaccine safety and not for religious reasons." *Id.* at 11.

But, Passarella and Dottenwhy cited to Scripture, establishing that they believe their bodies are a Temple to the Holy Spirit (one of the three persons of God), or a Temple of God. The vaccines certainly do have negative side effects, as they are warned about even on government websites. This means that Passarella and Dottenwhy were obligated by their personal religious beliefs to be careful with what they put into their bodies ("what I allow into my body.") *See e.g., Passarella Compl. Ex. 1.*

Aspirus warned Passarella and Dottenwhy (and other employees seeking exemptions) against "[c]iting scripture or sacred texts" improperly—which improperly put Aspirus in the position to be the arbiter of the proper way to cite religious texts. *See, Compl.* ¶¶ *18, 38.* Passarella and Dottenwhy were warned that if they cited Scripture or sacred texts in a way appellee did not approve, the request for exemption would be denied.

Passarella and Dottenwhy are Christians who, believe in the Bible and its proclamations, and cited it in their requests for a religious exemption, and Aspirus asserted that the "evaluation is a secular (non-religious) process." Being told by their employer (and "secularists") to limit how they, as Christians can interpret Scripture, or to determine whether Passarella and Dottenwhy had cited Scripture properly, reveals that the entire process was defective, and designed to intimidate them and give Aspirus maximum discretion to refuse religious exemptions.

Aspirus warned against asserting reasoning that would result in denial of the religious exemption, including asserting "*multiple [religious] reasons.*" Thus, Passarella and Dottenwhy were specifically told of appellee's "silo" nature of beliefs, which the Court adopted.

In addition, Passarella and Dottenwhy were warned that if they cited what Aspirus deemed "misinformation," the request for exemption would be denied. Passarella and Dottenwhy pled that Aspirus asserted what was "scientific" and what was "misinformation." But, Passarella and Dottenwhy disagreed with Aspirus's

conclusions, and believed it was Aspirus who was engaging in "misinformation." *Passarella Compl. ¶¶ 21, 22; Dottenwhy Compl. ¶¶ 20, 21.*

Aspirus warned Passarella and Dottenwhy that if they asserted "lack of safety or efficacy information" it would "likely result in a denial" of the religious exemption. Yet, "safety" concerns overlapped Passarella's and Dottenwhy's religious beliefs, and Aspirus ruled them out, indicating they would likely result in a denial of the request for a religious exemption.

Aspirus's process essentially held that concerns for "safety or efficacy" of the vaccines excluded any measure of any religious belief to be considered. In short, even though Aspirus provided a religious exemption process, its' policy skewed the process to make it difficult or impossible to actually get a religious exemption. *Compl. ¶¶ 18, 21, 22, 38, 40, 41.* Passarella and Dottenwhy pled that the conditions Appellee placed on the religious exemption process were not legal. *Passarella Compl. ¶¶ 21, 22; Dottenwhy Compl. ¶¶ 20, 21.*

Altogether, Aspirus' process prevented Passarella and Dottenwhy from fully expressing their religious exemption. They were prevented from listing all of their religious objections to the vaccine. Passarella and Dottenwhy were prevented from explaining the "overlap" between their religious beliefs and medical or health concerns. Passarella and Dottenwhy were prevented from explaining the "comprehensive" nature of their religious beliefs including even citing to "Scripture

and sacred texts." Passarella and Dottenwhy were bullied during the exemption

process which gave appellees more discretion and leeway to deny the exemption.

Aspirus's policy and determination of denial did not evaluate the depth of

Passarella and Dottenwhy religious beliefs. Aspirus made no effort to determine

Passarella's and Dottenwhy's "comprehensive" beliefs, or whether those beliefs were

part of their "pondering" of "fundamental and ultimate questions."

The district court determined on its own that it believed, as did Aspirus in

rejecting Passarella's and Dottenwhy's requests for religious exemptions in the first

place, that their beliefs were not "acceptable, logical, consistent, or comprehensible"

to Aspirus or the district court. In short, the district court fell short of established

precedent for Title VII claims.

### G.     The District court's Reliance on *Fallon* was misplaced.

The district court erroneously stated it "is not aware of any on-point decision

of the Seventh Circuit Court of Appeals," and then instead based its reasoning on a

Third Circuit case which has almost nothing in common with appellants' cases. *Fallon,*

877 F.3d 487 (3rd Cir. 2017). APP. 11-12, Or. at 11–12.

The district court erroneously ignored or improperly applied apposite, Seventh

Circuit law set forth above analyzing sincerely held religious beliefs, and instead relied

on *Fallon* from the Third Circuit in determining that Appellants did not hold sincerely

held religious beliefs. *See,* APP. at 11–12, Or. at 11–12. In *Fallon* the plaintiff admitted

he was *not* a "member of an organized religion," but rather, he made up his "religion"

in an essay. *Fallon*, 877 F.3d at 488-89. Thus, though the district court determined that it could not find "any on-point decision" from the Seventh Circuit, the district court chose to follow an off-point case from the Third Circuit. The court recognized that the Plaintiff in that case, who alleged religious discrimination, "was not a member of a mainstream religion." APP. 11, Or. at 11.

Stating that Fallon "was not a member of a mainstream religion" was a huge understatement. The *Fallon* plaintiff made up his own religion in an essay that he wrote. Because he made up his own religion, Fallon could not quote or rely on clergy or doctrine to support his alleged religious beliefs. *Fallon*, 877 F. 3d at 489. The plaintiff in *Fallon* could not identify a "deity," and no doctrine or systematic beliefs. The Court found the Plaintiff's beliefs were not "comprehensive in nature," *Fallon* 877 F.3d at 492, and his "religion [essay]," did not address the fundamental and ultimate questions in life.

*Fallon* is decisively different from this case where Appellants are Christians, and have quoted extensively from the Bible, the Catechism of the Catholic Church, and relied on prayer in determining whether their religious beliefs would permit them to take the vaccine. *Fallon* itself conceded that adherents to "traditional religions," such as Christianity, meet the test for sincerely held religious beliefs because Christianity ponders the "fundamental and ultimate questions having to do with deep and imponderable matters," which are "comprehensive in nature." *Fallon*, 877 F.3d at 492. This distinction alone separates Passarella's and Dottenwhy's claims, based on

"traditional religions," from *Fallon's* belief system based on his essay.  Thus, the

district court misapplied *Fallon* in denying appellants religious beliefs, and also failed

to recognize that even *Fallon* required the court to recognize that religious beliefs can

be part of a "comprehensive" set of beliefs.

      In addition to being followers of a "traditional" religion, appellants pled all the

other indices of a "mainstream" religion.  Passarella and Dottenwhy pled how their

beliefs were part of their religion's comprehensive analysis of the "deep and

imponderable matters," dealing with "fundamental and ultimate questions," such as

the beginning of life, how they view their bodies, and how that requires them to

judiciously control what they put into their bodies, and what vaccinations they allow

into their bodies.  Their beliefs are rooted in Scripture and the Catechism, and inform

them about what risks to take with their bodies without placing themselves in

opposition to God.  The district court disregarded Passarella's and Dottenwhy's

beliefs and pleading of the "comprehensive" nature of their beliefs.  Even under

*Fallon*, if properly interpreted, appellants' beliefs would have been recognized as

sincerely held.

      The district court wrongly equated Passarella's and Dottenwhy's sincerely held

and comprehensive religious beliefs with Fallon's made up beliefs.  "Passarella and

Dottenwhy beliefs about the COVID vaccine are, like Fallon's beliefs about the flu

vaccine, medical judgments about the safety of the vaccine, not matters of religious

belief."  APP. 11, Or. at 11.  The court had no basis to determine that Passarella's and

Dottenwhy's beliefs were "not matters of religious belief," failed to acknowledge the "overlap" with their religious beliefs, and wrongly equated appellants' beliefs with *Fallon's*. The district court simply substituted its own notion of appellants' religious beliefs, with what Passarella and Dottenwhy actually pled.

The district court then cited to two unreported cases that followed Fallon's inapplicable reasoning. *Finkbeiner v. Geisinger Clinic,* No. 4:21-CV-01903, 2022 WL 3702004 (M.D. Pa. Aug. 26, 2022), and *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan 23, 2023).

Those two cases, along with being unreported, and from federal court in Pennsylvania, were also *testing* cases. There are fewer religious beliefs against submitting to a medical test, than receiving a vaccine into your body which may kill or harm you. In short, the two unreported cases are simply not persuasive.

**H.      Aspirus recognized that Passarella's held sincere religious beliefs, but the district court failed to adhere to this factual concession.**

The district court also failed to specifically recognize Passarella's sincerely held religious beliefs because Aspirus had already recognized Passarella's beliefs in opposition to the flu vaccine as sincerely held. Passarella pled that in addition to being a nurse at [Aspirus'] facility, she was also a student for her nurse practitioner's license doing her clinical studies at Aspirus' facility. Here, Aspirus honored her *exact same religious exemption request* as a nurse practitioner student, yet, denied it for her nursing position. *Passarella Compl. ¶¶ 2, 23-29.*

Passarella pled the exact same religious exemption twice to Aspirus and one time Aspirus agreed it constituted a sincerely held religious belief, but in the other one Aspirus denied it.  Aspirus's granting of the request for a religious exemption on Passarella's student request is an admission that she established a "sincerely held religious belief."  At the very least it demonstrates that whether the belief is sincerely held is a factual issue for the fact finder in the case—not for a motion to dismiss.

Aspirus asserted in its district court briefing that "[it] *inadvertently* granted Passarella's [Appellant's] student request," Aspirus Mem. In Spt. Of Mot. to Dismiss at pp.11-15 (emphasis added), even though there was nothing in the record—no affidavit or other attachment—to suggest that its' admission of the religious exemption on Passarella's student request for a religious exemption was "*inadvertent*." The district court agreed with Aspirus.  The district court attempted to rationalize its decision by stating "What matters is the *content of her request*, not whether Aspirus approved similar requests under different circumstances." APP. 13, Or. at 13. (Emphasis added).  The "content" of Passarella's request for an exemption, however, *was the same for both* requests. (*See Passarella Compl.* ¶¶ *2, 29.*)  There is no support for the court's determination that the "content" of the requests for exemption were different. Passarella pled that both requests for exemptions were based on Exhibit 1 to the Complaint which is Passarella's statement of her "Deeply Held Religious Beliefs," and this must be accepted as true.  The district court simply ignores that the

same statement of religious beliefs was held to be a sincerely held religious beliefs in one situation but not the other.

## Conclusion

The district court's decision dismissing both Passarella's and Dottenwhy's Title VII claims, granting Aspirus' motion to dismiss, should be reversed.

Dated: May 15, 2023

/s/Erick G. Kaardal
Erick G. Kaardal, 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South 5th Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone:  (612) 341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs/Appellants*

**CERTIFICATE OF COMPLIANCE**

**WITH FED. R. APP. P. 32 (a)(7)**

The undersigned certifies that the Brief submitted herein contains 12,937 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word 2016, the word processing system used to prepare this Brief.

 /s/Erick G. Kaardal
Erick G. Kaardal

**APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT**

I, Erick G. Kaardal, affirm that I have complied with Circuit Court Rule 30(a)

and (b) to the best of my knowledge.

_/s/Erick G. Kaardal_____

Erick G. Kaardal

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit

by using the CM/ECF system. I certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 15, 2023                    /s/Erick G. Kaardal

Erick G. Kaardal

**Nos. 23-1660 and 23-1661**

**United States Court Of Appeals For The Seventh Circuit**

**MEGAN PASSARELLA and SANDRA DOTTENWHY,**

Plaintiffs-Appellants,

v.

**ASPIRUS, INC.,**

Defendant-Appellee.

On Appeal from the U.S. District Court for the Western District of Wisconsin,
Case No: 3:22-cv-00287-jdp and Case No: 3:22-cv-00342-jdp
District Chief Judge James D. Peterson
Date NOA filed in District Court: 4/4/2023

**APPELLANTS' APPENDIX**

Erick G. Kaardal, (WI) 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs-Appellants*

May 15, 2023

# APPENDIX INDEX

Opinion and Order, U.S. District Court for the Western District of Wisconsin,
No. 3:22-cv-00287-jdp and No. 3:22-cv-00342-jdp, March 10, 2023 ...............................APP. 1

Consolidated Order, U.S. Court of Appeals for the Seventh Circuit,
Nos. 23-1660 and 23-1661, April 10, 2023 .........................................................................APP. 18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEGAN PASSARELLA,

|  | | |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | 22-cv-287-jdp |
| ASPIRUS, INC., | | |
| | Defendant. | |

---

SANDRA DOTTENWHY,

|  | | |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | 22-cv-342-jdp |
| ASPIRUS, INC., | | |
| | Defendant. | |

---

CYNTHIA CLUTTER,

|  | | |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | 22-cv-392-jdp |
| ASPIRUS WAUSAU HOSPITAL, INC., | | |
| | Defendant. | |

---

Plaintiffs Megan Passarella, Sandra Dottenwhy, and Cynthia Clutter were health care workers at hospitals managed by Aspirus, Inc. Plaintiffs refused to comply with Aspirus's rule requiring employees to be vaccinated against COVID-19 and they were terminated. Plaintiffs filed these three suits contending that they were entitled to a religious exemption under Title VII of the 1964 Civil Rights Act. They also say that Aspirus violated the Americans with Disabilities Act by requiring regular COVID tests.

Aspirus moves to dismiss the suits for failure to state a claim. Aspirus contends that plaintiffs' Title VII claims fail because they object to the vaccine mandate as a matter of medical judgment rather than religious conviction. Aspirus contends that plaintiffs' ADA claims based on their objections to COVID testing fail because they failed to exhaust those claims. Dkt. 5.[1]

The court will decide the motions in one order because all three cases are about Aspirus's vaccine mandate, plaintiffs are represented by the same counsel, and the parties make similar arguments in each case. As for the Americans with Disabilities Act claims, none of the plaintiffs exhausted their administrative remedies prior to filing suit. The ADA claims will be dismissed without prejudice.

The court will dismiss Passarella's and Dottenwhy's Title VII claims because their exemption requests show that their objections to the COVID vaccine were based on their medical judgment that the vaccine was unsafe. The court will not dismiss Clutter's Title VII claim at the pleading stage because she has alleged that her objection to the vaccine requirement is grounded in a sincere religious conviction. Clutter's case will proceed, but solely on her Title VII claim.

BACKGROUND

A. Scope of the pleadings

Both sides have submitted documents outside the complaint, which raises the question whether it is appropriate to consider those documents in deciding Aspirus's motions to dismiss. A court may consider documents outside the complaint in deciding a motion to dismiss under

---

[1] All citations are to case No. 22-cv-287-jdp except where noted.

Federal Rule of Civil Procedure 12(b)(6) without converting it into a motion for summary judgment if the documents are referred to in the complaint, concededly authentic, and central to the plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). The materials may be provided by either party, so long as they meet these three requirements. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). The rule "prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)) (cleaned up).

The parties have submitted similar materials in all three cases, specifically the plaintiffs' religious exemption requests and appeals, as well as the charges plaintiffs filed with the Equal Employment Opportunity Commission (EEOC). Each plaintiff refers to her exemption request and her EEOC charge in her complaint, and the documents are central to their claims. *See Stoetzer v. First State Bank of Bloomington*, No. 21-cv-1138-JES-JEH, 2022 WL 386018 (C.D. Ill. Feb. 8, 2022) (considering EEOC charge at motion to dismiss stage); *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118-bbc, 2022 WL 2833961 (W.D. Wis. July 20, 2022) (same). And no party has contested the authenticity of any of the exhibits submitted on the motion. *See Hecker*, 556 F.3d at 582. So the court will consider those materials in deciding the motions to dismiss.

## B.  Factual background

The court draws the following facts from plaintiffs' complaints, their exemption requests, and their EEOC charges. When deciding a Rule 12(b)(6) motion to dismiss, the court

must accept all of the plaintiff's plausible factual allegations as true and draw all reasonable inferences in her favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

### 1. Aspirus's COVID-19 policies

Defendant Aspirus, Inc. is a non-profit health system that operates hospitals, clinics, and pharmacies in Wisconsin and the upper peninsula of Michigan.[2] Plaintiffs were employed at Aspirus hospitals in Wisconsin. In August 2021, Aspirus began requiring employees who had not been vaccinated against COVID-19 to submit to bi-weekly testing for the virus. All plaintiffs complied with the testing requirement.

A few months later in November 2021, Aspirus notified its employees that it would require them to be vaccinated against COVID as a condition of employment. Employees who did not receive the vaccine would be terminated in December. Aspirus allowed employees to request a religious exemption from the vaccination requirement. Aspirus told employees that requests "including non-religious rationale anywhere in the submission will likely result in denial." Dkt. 1, ¶ 19. Aspirus's examples of non-religious rationale included the vaccine's "adverse impact on fertility" and a "lack of safety or efficacy information." *Id*. Each plaintiff submitted a religious exemption request.

### 2. Plaintiffs' religious exemption requests and appeals

#### a. Sandra Dottenwhy

Plaintiff Sandra Dottenwhy was employed as a pharmacy technician. Dottenwhy sought an exemption from the vaccination requirement. Her explanation was:

---

[2] Aspirus Wausau Hospital, Inc., is the defendant in Clutter's case. But her complaint shows that Aspirus Wausau Hospital is also managed by Aspirus. *See* No. 22-cv-392-jdp, Dkt. 1, ¶¶ 1, 5.

> Description of beliefs:
>
> I am asserting my rights as a Christian to be exempt from taking this vaccine. I feel it was developed in a rush. I don't trust the information and long-term effects. Therefore I believe this is not right for me to put this vaccine into my body. I also feel that it's my body and no one has the right to tell me what to do with my personal being. I have prayed about this and have asked GOD for guidance, and believe that HE is with me on this decision.

No. 22-cv-342, Dkt. 8-1. Her request was denied.

> Dottenwhy appealed, stating:
>
> So if it's my body my choice when it comes to abortion, WHICH I AM TOTALLY AGAINST. Why isn't it my body my choice when it comes to a vaccine, WHICH I AM TOTALLY AGAINST. In my opinion this vaccine was developed too quickly. Not enough time for deep study. I have prayed long and hard about this and I am fearful of the effects. The Bible says: My body is a temple of the Holy Spirit and to present my body as a living sacrifice, Holy and acceptable to God. I have read through Title VII of the Civil Rights Act of 1964, and I pray you would not go against my rights as a Christian and employee that has served your organization and the community for 18 years.

No. 22-cv-342, Dkt. 8-2. The appeal was denied.

**b.  Megan Passarella**

Plaintiff Megan Passarella worked at Aspirus as a registered nurse. Passarella requested

an exemption from the vaccination requirement, which was denied. Passarella doesn't say what

she wrote in her initial exemption request, and the parties didn't submit a copy of the request

to the court.

Passarella appealed. With her appeal, Passarella submitted a five-page letter stating that

her religious beliefs prevented her from receiving the vaccine. Dkt. 1-1. Passarella began with

the doctrinal basis for her request. She said that as a Christian, she believes that God dwells

within her body. Thus her body is a temple, which she must use to glorify God and protect

APP. 5

from defilement. She entrusts her body to God, who is her ultimate healer and protector.

Turning specifically to the COVID vaccine, she said:

> After prayerful consideration, I don't feel at peace about receiving the COVID vaccine. I believe that I must trust God with my body (His temple) and that he will provide for me and protect me as he has already proven time and time again during my life. . . . Although, I have received other vaccines, in which my "sincerely held belief" might be brought into question, to which I would respond, I have made shrewd decisions regarding the vaccines I put into my body. One example of this is the Gardasil vaccine. I have not received this vaccine, as there is plenty of evidence of adverse, debilitating injuries resulting from receiving the vaccine. Although it comes highly recommended by physicians, it goes against my conscience to receive it; therefore, I abide by that, as I know it is a message from God. James 4:17 states that failing to obey our conscience is a sin. Therefore, this means receiving the vaccine would not be acting in accordance with God. It would be a sin for me to receive it.

Dkt. 1-1, at 3. Passarella's appeal was denied.

### c. **Cynthia Clutter**

Plaintiff Cynthia Clutter worked for Aspirus as a CT technician. She sought an

exemption, stating:

> Description of beliefs:
>
> I am seeking an exemption from the Covid-19 vaccination based upon my informed moral conscience and best judgment. Vaccination is not a universal obligation. Religious leaders of all faiths agree. Mandating me to take the vaccination imposes the judgments of others upon my own moral conscience, which is contrary to my sincerely held beliefs.
>
> . . . .
>
> Consistency rationale:
>
> I oppose all vaccines. My children are not vaccinated. My husband has never been vaccinated. My son is not circumcised. We are the way God made us. It is my right[ as] an American and

> a Christian to remain that way. I feel forcing one to get a vaccine again[st] their will is a complete violation of my rights.

No. 22-cv-392, Dkt. 11-1. Her request was denied.

Clutter appealed, stating, in pertinent part:

> Explanation of appeal:
>
> The voice of God lives inside me failing to obey is a sin. I am obligated to follow his commands and the words of the Bible[.] My consciences come from God and failing to obey is a sin. There are many vers[es] in the Bible that can be quoted supporting my beliefs. . . . My religious beliefs are sincerely held and must be followed. I want to preserve my religious claims and that is what prevents me from taking the COVID shot.

No. 22-cv-392, Dkt. 11-2. Aspirus denied her appeal.

### 3. Plaintiffs's terminations and EEOC charges

Plaintiffs did not receive the vaccine after their requests for exemptions were denied. Aspirus terminated plaintiffs' employment on December 6, 2021. Plaintiffs filed charges of religious discrimination against Aspirus with the EEOC, alleging that they had been fired for failing to comply with the vaccination requirement. None of the EEOC charges included allegations about the COVID testing requirement. *See* Dkt. 6-1 (Passarella); No. 22-cv-342-jdp, Dkt. 8-3 (Dottenwhy;) No. 22-cv-392-jdp, Dkt. 11-3 (Clutter). The EEOC issued plaintiffs right-to-sue letters, and plaintiffs sued Aspirus in this court.

The court will discuss additional facts as they become relevant to the analysis.

APP. 7

ANALYSIS

The court begins with plaintiffs' claims based on religious discrimination under Title VII, and then turns to their claims under the Americans with Disabilities Act.[3]

## A. Title VII religious discrimination claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and job applicants based on their religion. 42 U.S.C. § 2000e-2(a). The law requires employers to provide reasonable accommodations for the religious practices of employees, unless any reasonable accommodation would pose an undue burden on the employer. *Adeyeye v. Heartland Sweeteners*, LLC, 721 F.3d 444, 448 (7th Cir. 2013).

To make out a prima facie case of religious discrimination based on the failure to accommodate, a plaintiff must show that: (1) the observance or practice conflicting with an employment requirement is religious in nature; (2) that she called the religious observance or practice to her employer's attention; and (3) that the religious observance or practice was the basis for her discharge. *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012). Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to show that any reasonable accommodation would impose an undue burden on defendant. *Id.*

The issue at this point in the case is whether plaintiffs have adequately pleaded their prima facie case. Aspirus moves to dismiss plaintiffs' claims on the ground that plaintiffs have not alleged the first element, that they hold a religious belief that conflicts with the vaccination

---

[3] In her brief, Dottenwhy states that she has pleaded an age discrimination claim. *See* No. 22-cv-342, Dkt. 11, at 20. But she does not allege that she was discriminated against because of her age in her complaint, and she does not include an age discrimination claim in her causes of action. *See* Dkt. 1, at 9–12. The court concludes that Dottenwhy has not pleaded an age discrimination claim.

APP. 8

requirement. Aspirus contends that plaintiffs asked to be excused from the vaccination requirement out of concern for the safety of the vaccine, which is a matter of personal judgment, not a religious belief or practice.

Religion is, at least initially, defined broadly under Title VII:

> The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). The definition goes on to narrow the concept by incorporating the requirements that any religious accommodation must be reasonable and not impose any undue burden. But the accommodation requirements are not at issue at this point in this case. So, for purposes of Aspirus's motion, the court construes the concept of religion broadly.

A belief is religious if it is: (1) "religious in the person's own scheme of things"; and (2) sincerely held. *Adeyeye*, 721 F.3d at 448 (internal quotation marks omitted). A belief is religious in a person's own scheme of things if it "occup[ies] a place parallel to that filled by God in traditionally religious persons." *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). Such beliefs "deal[] with issues of ultimate concern," such as "matters of the afterlife, spirituality or the soul, among other possibilities." *Adeyeye*, 721 F.3d at 448 (internal quotation marks omitted). A plaintiffs' assertion that "[her] belief is an essential part of a religious faith must be given great weight." *Id*. (quoting *United States v. Seeger*, 380 U.S. 163, 184 (1965)). The court does not concern itself with the truth or validity of religious belief, nor does it matter whether the belief is part of a mainstream religion or an idiosyncratic one. *Id*. Nevertheless, the court must distinguish between religious belief and other matters of personal conviction,

because only religious beliefs warrant the heightened protection of the First Amendment or Title VII. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

The EEOC has issued guidance consistent with these principles. According to the EEOC, "objections to a COVID-19 vaccination requirement that are purely based on . . . nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (last updated July 12, 2022).[4] However, a religious belief that "overlap[s]" with a political view is still protected by Title VII, so long as the view "is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id*.

### 1. Plaintiffs Passarella and Dottenwhy

Passarella and Dottenwhy sought exemptions on similar grounds, so the court will consider their claims together.

In Dottenwhy's request for exemption, No. 22-cv-342, Dkt. 8-1, she claims a right to refuse the vaccine "as a Christian," and she says that she has prayed over the matter and believes that God supports her decision. But her request is predicated fundamentally on her concerns with the safety of the vaccine and her right to bodily integrity. In her appeal, she says that her body is a temple of the Holy Spirit. But she did not articulate any religious belief that would prevent her from taking the vaccine if she believed it was safe.

Passarella's request for exemption is not in the record. But in her appeal, she sought an exemption for reasons similar to those given by Dottenwhy. Passarella gave a more elaborate

---

[4] *Available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

explanation of how her commitment to her own health is a matter of religious conviction. Her belief that her body is a temple means that she must live a healthful life and not do anything to harm her body. But, as with Dottenwhy, there is no religious belief that would prevent Passarella from taking the vaccine if she believed it was safe. Indeed, Passarella says that she has not refused all vaccines. Rather, she makes "shrewd" decisions about vaccine safety and refuses those she believes pose undue risk.

The court concludes that Dottenwhy and Passarella refused the vaccine based on their personal judgments about vaccine safety and not for religious reasons. They couched their requests in religious terms, claiming that their decisions had been ratified by prayer. But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.

The court is not aware of any on-point decision of the Seventh Circuit Court of Appeals. But the reasoning of *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017), is instructive. Fallon, the plaintiff, was terminated from his position as a health care worker after he refused the flu vaccine. He alleged religious discrimination. Although he was not a member of a mainstream religion, he claimed spiritual commitments that led him to believe that he should not harm his own body and that the flu vaccine might do more harm than good. The court held that Fallon's beliefs were not truly religious ones and that his judgment about the flu vaccine was itself simply a medical judgment. The Third Circuit affirmed the district court's dismissal of the complaint for failure to state a claim. *Id*. at 492. Passarella and Dottenwhy beliefs about the COVID vaccine are, like Fallon's beliefs about the flu vaccine, medical judgments about the safety of the vaccine, not matters of religious belief.

Plaintiffs point out that Fallon did not belong to any mainstream religion and the Third Circuit did not regard any of his beliefs to be religious ones. That is a fair point, although this court does not take that distinction to be essential to *Fallon's* holding. Even if Fallon's overall belief system had been systematic enough and profound enough to constitute a religion, his belief about the flu vaccine was still just a medical judgment about the effectiveness of the vaccine.

District courts in the Third Circuit have applied the reasoning of *Fallon* to adherents of mainstream religions, dismissing cases where requests for religious exemptions were based on medical judgments. In *Finkbeiner v. Geisinger Clinic,* the plaintiff asked for an exemption from a COVID testing requirement because "I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good for bad for me." No. 4:21-CV-01903, 2022 WL 3702004, at *2 (M.D. Pa. Aug. 26, 2022). She objected to COVID tests because she was "afraid of the side effects and potential future health risks these chemicals may cause." *Id*. The court concluded that the plaintiff's statements showed that "her opposition stems from her medical beliefs." *Id.* at *4. Likewise, in *Blackwell v. Lehigh Valley Health Network*, the court concluded that the plaintiff's belief that COVID testing was ineffective was not religious because it "challenged the factual and scientific basis" for the employer's testing requirement. No. 5:22-cv-03360-JMG, 2023 WL 362392, at *7 (E.D. Pa. Jan. 23, 2023).

Passarella makes an additional argument for why her claim should not be dismissed. At the same time Passarella was working for Aspirus as a nurse, she was pursuing a master's degree to become a family nurse practitioner. As part of the program, Passarella began a student clinical rotation at the same hospital where she worked. Aspirus also required clinical students to receive the COVID vaccine. Passarella sought and received a separate exemption from

APP. 12

Aspirus's vaccine requirement in her capacity as a clinical student. Passarella says this amounts to an admission from Aspirus that her beliefs are religious and sincerely held.

The court is not persuaded. Aspirus's decision to grant Passarella's request as a student is not a judicial admission that her beliefs are religious for the purposes of a lawsuit under Title VII. Passarella still has the burden to plead facts to show that her beliefs are religious, rather than personal, political, or medical. What matters is the content of her request, not whether Aspirus approved similar requests under different circumstances. Passarella provides no authority that Aspirus is estopped from arguing that an employee's beliefs are not religious because it approved other exemption requests for other categories of individuals.

Because the pleadings show that Passarella and Dottenwhy's objections to the COVID vaccine are medical, not religious, their claims will be dismissed with prejudice.

## 2. Plaintiff Clutter

Clutter's exemption request is subtly different from those of Passarella and Dottenwhy. Clutter initially phrased her exemption request as a matter of "moral conscience" and "best judgment" and she expressed her opposition to all vaccines. A blanket opposition to all vaccines might simply be a medical judgment about the safety of vaccines, no more worthy of protection as a religious belief than Passarella and Dottenwhy's objection to the COVID vaccine.

But Clutter's exemption request provided a religious basis for her anti-vaccine beliefs:

> I oppose all vaccines. My children are not vaccinated. My husband has never been vaccinated. My son is not circumcised. We are the way God made us. It is my right[ as] an American and a Christian to remain that way.

No. 22-cv-392, Dkt. 11-1. The religious basis for Clutter's anti-vaccine beliefs is not thoroughly explained. She does not, for example, describe herself as a strict Christian Scientist who relies entirely on prayer, forswearing all medical intervention. With the benefit of discovery, Aspirus

13

may yet be able to show that Clutter's anti-vaccine beliefs are really a matter of medical judgment, politics, or some other personal conviction. But on a motion to dismiss, where the court must credit the allegations in the complaint, Clutter has adequately pleaded that her objection to the COVID vaccine is a religious one, rooted in her belief that she must remain as God made her.

Clutter has alleged that she has a religious belief that conflicts with Aspirus's vaccination requirement, so the court will deny Aspirus's motion to dismiss her Title VII claim.

**B. ADA claim**

The ADA prohibits employers from requiring its employees to undergo medical examinations that are not job-related or consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). Plaintiffs allege that Aspirus violated this section of the ADA both by subjecting them to COVID-19 testing and by imposing a vaccine requirement. *See* Dkt. 1, ¶ 51. The challenge to the vaccine requirement fails to state a claim because a medical examination is "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 835 (7th Cir. 2005) (quoting EEOC guidance). Aspirus's vaccine mandate does not "seek information" about plaintiffs' health, so it cannot violate subsection 12112(d).

As for the testing claims, Aspirus provides two reasons for why those must be dismissed. First, it contends that § 12112(d) does not cover plaintiffs because they do not allege that they had an actual or perceived disability. But a non-disabled individual may still bring a claim that they were subjected to an unlawful medical examination under this part of the statute. *Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015) ("All employees,

regardless of whether they have a qualifying disability under the ADA, are protected under [§ 12112(d)]).” So the court will not dismiss plaintiffs’ ADA claims on that ground.

The second reason has more traction. Before bringing a lawsuit under the ADA, a plaintiff must file a charge with the EEOC. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018); 42 U.S.C. § 12117(a) (applying Title VII’s exhaustion procedures to the ADA). If a plaintiff files suit in federal court, she may bring “only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations.” *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal quotation marks omitted). This requirement serves two purposes: (1) it gives the EEOC and the employer an opportunity to settle the matter; and (2) it ensures that the employer has adequate notice of the conduct the employee is challenging. *Id*. Aspirus contends that plaintiffs failed to exhaust their administrative remedies with respect to this claim because they did not include that claim in their EEOC charges.

The failure to exhaust administrative remedies is an affirmative defense. *See Salas v. Wisconsin Dep’t of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007). Courts “should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses.” *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But for reasons explained above, the court has determined that it is appropriate to consider plaintiffs’ EEOC charges at the pleading stage. And plaintiffs don’t contend that the exhaustion issue should be decided later in the case, presumably because the court has all the information it needs to decide the issue. So the court will consider the issue here. *See Egelkrout*, 2022 WL 2833961 (deciding exhaustion at 12(b)(6) stage).

15

The decisive question is whether the ADA claims asserted in these cases are like, or reasonably related to, the claims asserted in their EEOC charges. To be reasonably related, the EEOC charge and the complaint "must describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Here, none of plaintiffs mentioned the testing requirement in their EEOC charge. Instead, the plaintiffs alleged only that they had been fired for failing to comply with Aspirus's vaccination mandate. Thus, the plaintiffs' charges do not describe the same conduct as the ADA claims they assert in their lawsuits. "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Because their charges complain only about the vaccine mandate, they did not exhaust any claims about the allegedly unlawful COVID tests.

Plaintiffs contend that, even if their EEOC charges did not exhaust their claims, the claims should not be dismissed because they have filed a second round of EEOC charges related to the testing requirement. Dottenwhy and Clutter have already received their right to sue letters for their second charges, *see* No. 22-cv-342, Dkt. 11-2 (Dottenwhy); No. 22-cv-392, Dkt. 12-1 (Clutter), and Passarella states that she will receive a second right to sue letter "at some point," Dkt. 9, at 24. Plaintiffs argue that it is more efficient to allow them to proceed on their ADA claims than to make them re-file their ADA claims at a later date. But "[a]n ADA plaintiff must file a charge with the EEOC *before* bringing a court action against an employer." *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014) (emphasis added); *see also Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies"); *Ford v. Johnson*, 362 F.3d 395,

16

398 (7th Cir. 2004) (stating that there can be "no suit under the employment discrimination laws until the parties have had time for administrative conciliation.")

Plaintiffs provide no authority that would allow a plaintiff to exhaust an ADA claim after the suit is filed. To the contrary, courts routinely dismiss "suit[s] that begin[] too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending." *Ford,* 362 F.3d at 398 (citing cases applying the Prison Litigation Reform Act and the Federal Tort Claims Act). The court will dismiss plaintiffs' ADA claims without prejudice.

ORDER

IT IS ORDERED that:

1. Defendant Aspirus, Inc.'s motion to dismiss in case No. 22-cv-287-jdp, Dkt. 5, is GRANTED. Plaintiff Megan Passarella's religious discrimination claim is DISMISSED with prejudice. Plaintiff's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The clerk of court is directed to enter judgment for defendant and close the case.

2. Defendant's motion to dismiss in case No. 22-cv-342-jdp, Dkt. 7, is GRANTED. Plaintiff Sandra Dottenwhy's religious discrimination claim is DISMISSED with prejudice. Plaintiff's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The clerk of court is directed to enter judgment for defendant and close the case.

3. Defendant's motion to dismiss in case No. 22-cv-392-jdp, Dkt. 10, is GRANTED in part. Plaintiff Cynthia Clutter's claim under the ADA is DISMISSED without prejudice for failure to exhaust her administrative remedies. The motion is DENIED as to plaintiff's Title VII claim.

Entered March 9, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

17

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

April 10, 2023

**By the Court:**

| | |
|---|---|
| MEGAN PASSARELLA and SANDRA DOTTENWHY,<br> Plaintiffs-Appellants,<br><br>Nos. 23-1660 and 23-1661      v.<br><br>ASPIRUS, INC.,<br> Defendant-Appellee. | ] Appeals from the United<br>] States District Court for<br>] the Western District of<br>] Wisconsin.<br>]<br>] No. 3:22-cv-00287-jdp<br>] No. 3:22-cv-00342-jdp<br>]<br>] James D. Peterson,<br>]    Chief Judge. |

**O R D E R**

The court, on its own motion, orders these appeals are CONSOLIDATED for purposes of briefing and disposition.

The briefing schedule is as follows:

1.     The appellants shall file their joint consolidated brief and required short appendix on or before May 15, 2023.

2.     The appellee shall file its consolidated brief on or before June 14, 2023.

3.     The appellants shall file their joint consolidated reply brief, if any, on or before July 5, 2023.

**Important Scheduling Notice!**

**Hearing notices are mailed shortly before the date of oral argument. Please note that counsel's unavailability for oral argument must be submitted by letter, filed electronically with the Clerk's Office, no later than the filing of the appellant's brief in a criminal case and the filing of an appellee's brief in a civil case.** *See* **Cir. R. 34(b)(3). The court's calendar is located at http://www.ca7.uscourts.gov/cal/argcalendar.pdf. Once scheduled, oral argument is rescheduled only in extraordinary circumstances.** *See* **Cir. R. 34(b)(4), (e).**

**APPELLANT COUNSEL'S AFFIRMATIVE STATEMENT**

I, Erick G. Kaardal, affirm that I have complied with Circuit Court Rule 30(a) and (b) to the best of my knowledge.

/s/Erick G. Kaardal
Erick G. Kaardal

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 15, 2023

/s/Erick G. Kaardal
Erick G. Kaardal